[No. A106010. First Dist., Div. Four. Jan. 19, 2005.]

In re LENNIES H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LENNIES H., Defendant and Appellant.

1234

COUNSEL

Kimberly B. Fitzgerald, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, and Ronald E. Niver, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

SEPULVEDA, J.—The minor Lennies H. appeals from the jurisdictional and dispositional findings of the Solano County Juvenile Court, adjudging him to be a ward of the court in connection with one count of felony carjacking. The minor's sole contention on appeal is that the juvenile court erred in denying his motion to suppress because the search of his pocket, revealing the car keys from the stolen vehicle, exceeded the scope of a patsearch permitted by *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]. We affirm.

## BACKGROUND

On October 23, 2003, at approximately 8:45 p.m., Adam Allen was standing near his vehicle in the Four Oaks area of Sacramento, when two

people approached him from behind. One person put a gun to his head and said, "Don't move." The second person removed Allen's car keys from his pocket; a third person was also present. After his car keys were taken, Allen was told to get on the ground and the three people left in his vehicle, a burgundy Chevrolet TrailBlazer with gold trim bearing the license plate No. 4UIT448. Allen reported the incident to the Sacramento Police Department.

On October 24, 2003, at approximately 3:30 p.m., Corporal John Garcia of the Vallejo Police Department responded to the 1100 block of Roleen after receiving a report that the vehicle stolen the previous day in Sacramento had been in the area. The officer was advised that three Black males had used a firearm to take the vehicle. Corporal Garcia went to the 900 block of Roleen, where he surveilled the vehicle from 3:30 p.m. to 6:06 p.m. During that period, Corporal Garcia saw three Black men (the minor, a codefendant, and a person not identified at the hearing) walk "half a dozen or more" times from a nearby residence and "kind of look around, look at the vehicle, go on the sidewalk again, look at the vehicle and then look side to side up and down the street . . . ."

Corporal Garcia, together with two other officers, decided to approach the minor and the codefendant as they were walking from the vehicle to the residence. Corporal Garcia asked them to stop and said that he wanted to talk to them. Corporal Garcia asked them if they had any knowledge about the Chevrolet TrailBlazer and if they had any keys in their possession. The minor and the codefendant denied having any knowledge about the TrailBlazer and denied that they possessed any keys.

During this time, Officer Brian Bates walked to where the TrailBlazer was parked and opened the unlocked driver's door to allow his K-9 dog to enter the vehicle. After the dog sniffed the floorboards and the driver's seat, Officer Bates commanded it to track. The leashed dog then pulled Officer Bates in the direction of the three males who were sitting on the curb across the street.[1] The dog did not walk specifically to the minor or the codefendant.

After the dog tracked from the vehicle to where the minor was sitting, Corporal Garcia conducted a patsearch. While patting the minor's left front pants pocket, Corporal Garcia felt what he thought were keys. He stated that he knew the object was not a weapon and that it was immediately apparent that it was keys. Corporal Garcia removed the keys from the minor's pocket, after the minor denied any knowledge of the keys. Upon removing the keys,

---

[1] At some point Corporal Garcia directed the third Black male to sit on the curb with the minor and the codefendant.

Corporal Garcia saw they bore a Chevrolet insignia. He handed the keys to Officer Bates, who pushed a button on the key fob that activated the horn and the lighting and also the locking system. The minor was then handcuffed, arrested, and transported to the Vallejo Police Department. At the police station, after being advised of and waiving his constitutional rights, the minor admitted his involvement in the car theft.

Based on these facts, a petition under Welfare and Institutions Code section 602 was filed alleging the minor committed the following felonies: (1) carjacking (Pen. Code, § 215, subd. (a)), with a firearm enhancement (Pen. Code, §§ 1203.06, subd. (a)(1), 12022.5, subd. (a), former subd. (a)(2)); and (2) conspiracy to commit a carjacking (Pen. Code, §§ 182, subd. (a)(1), 215, subd. (a)).

The minor filed a motion to suppress, arguing, among other things, that his statement and the set of keys had to be excluded because they were the product of an illegal search. The juvenile court conducted an evidentiary hearing and denied the motion. The court sustained count I (carjacking), while finding the weapons enhancement of that count untrue, and did not sustain count II (conspiracy to commit carjacking). The court then declared the minor a ward of the court and placed him on probation in a youth facility, and determined his maximum period of confinement to be nine years. This appeal followed.

## DISCUSSION

### A. *Standard of Review.*

■ The standard of review of a trial court's ruling on a motion to suppress is well established and is equally applicable to juvenile court proceedings. " 'On appeal from the denial of a suppression motion, the court reviews the evidence in a light favorable to the trial court's ruling. [Citation.] We must uphold those express or implied findings of fact by the trial court that are supported by substantial evidence and independently determine whether the facts support the court's legal conclusions.' [Citation.]" (*In re William V.* (2003) 111 Cal.App.4th 1464, 1468 [4 Cal.Rptr.3d 695].)

### B. *The Juvenile Court Did Not Err in Denying the Motion to Suppress.*

The minor does not dispute that the police had reasonable suspicion to detain and patsearch him, but contends that the officer lacked legal justification to remove the keys from his pocket.

A *Terry* search is limited to "an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Terry v. Ohio, supra,* 392 U.S. at p. 29.) As a general rule, an officer may not search a suspect's pockets during a patdown unless he or she encounters an object there that feels like a weapon. (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957 [27 Cal.Rptr.2d 44].) However, under what has been termed the "plain-touch" exception to the warrant requirement (*People v. Dibb* (1995) 37 Cal.App.4th 832, 835 [43 Cal.Rptr.2d 823]), the officer may seize an object that is not a weapon if "its incriminating character is 'immediately apparent' " (*People v. Dickey, supra,* 21 Cal.App.4th at p. 957). "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 375–376 [124 L.Ed.2d 334, 113 S.Ct. 2130] (*Dickerson*).)

Respondent concedes that Corporal Garcia did not believe that the keys were weapons. However, that fact did not necessarily preclude the seizure of the keys under the "plain-feel" exception of *Dickerson, supra,* 508 U.S. 366. While it is true that, unlike a rock of cocaine, a key is not inherently illegal to possess, the issue is whether its incriminating character was immediately apparent. (*Id.* at p. 375; *People v. Dickey, supra,* 21 Cal.App.4th at p. 957.) The minor contends that the search was not justified under *Dickerson* because, without viewing the keys to determine that they belonged to the stolen vehicle, Corporal Garcia could not possibly have believed they were "immediately apparent contraband."

In *Dickerson, supra,* 508 U.S. 366, the police stopped a defendant as he was leaving a building known for cocaine traffic because he acted in an evasive manner when he saw the police. (*Id.* pp. 368–369.) A patsearch revealed no weapons, but the officer felt a "small lump" in defendant's pocket. (*Id.* at p. 369.) The officer did not immediately suspect the lump was contraband but examined it further and, according to the state courts' findings, "determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." (*Id.* at p. 378.)

In determining whether the incriminating nature of the lump was immediately recognizable, the court in *Dickerson, supra,* 508 U.S. at pages 378–379, analogized to its ruling in *Arizona v. Hicks* (1987) 480 U.S. 321 [94 L.Ed.2d 347, 107 S.Ct. 1149] (*Hicks*), discussing the plain view doctrine. In *Hicks,* the "Court held invalid the seizure of stolen stereo equipment found by police

while executing a valid search for other evidence. Although the police were lawfully on the premises, they obtained probable cause to believe that the stereo equipment was contraband only after moving the equipment to permit officers to read its serial numbers. The subsequent seizure of the equipment could not be justified by the plain-view doctrine, [the] *Court explained, because the incriminating character of the stereo equipment was not immediately apparent; rather, probable cause to believe that the equipment was stolen arose only as a result of a further search*—the moving of the equipment—that was not authorized by a search warrant or by any exception to the warrant requirement." (*Dickerson, supra,* 508 U.S. at pp. 378–379, italics added.)

By analogy, the court in *Dickerson, supra,* 508 U.S. 366 determined that the officer could not know the item was contraband until after he further manipulated the object and since that further manipulation constituted an illegal search, it could not be justified by *Terry v. Ohio, supra,* 392 U.S. 1 or by any other exception to the warrant requirement. (*Dickerson, supra,* 508 U.S. at p. 379.)

██ In contrast to the officers in *Hicks* and *Dickerson,* Corporal Garcia had probable cause to believe that the keys were evidence linking the minor to the carjacking at the time of the initial "plain-feel" search. The minor argues that Corporal Garcia's question to the minor about whether he had any knowledge about the keys just prior to removing them is analogous to the further manipulation discussed in *Dickerson.* We disagree. At the time Corporal Garcia felt the keys in the minor's pocket he knew the following: the minor matched the description of one of the suspects; he inspected a vehicle, bearing the license plate and description of the stolen TrailBlazer, six or more times in a two-and-a-half-hour period; a police dog sniffed inside of the stolen TrailBlazer and pulled Officer Bates in the direction of where the minor was sitting; and during a lawful patdown search for weapons, Corporal Garcia felt keys in the minor's pocket after the minor previously denied any knowledge of them when he was first contacted by the officer. Taken together these circumstances would warrant a reasonable person to conclude that the minor was hiding evidence that would connect him to the crime being investigated. (See, e.g., *People v. Loudermilk* (1987) 195 Cal.App.3d 996, 1005–1006 [241 Cal.Rptr. 208].)

██ Probable cause exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 103 S.Ct. 2317].) It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (*Id.* at pp. 243–244, fn. 13.)

Here, the minor's connection to the car was established by his inspection of the vehicle six or more times in a two-and-a-half-hour period. Additionally, the police dog tracked in the direction of the minor, indicating there was a fair probability that he had been in the vehicle. (See, e.g., *United States v. Kennedy* (10th Cir. 1997) 131 F.3d 1371, 1373–1374, 1378 [probable cause found where dog alerted police to two suitcases containing narcotics belonging to defendant]; *United States v. Berry* (6th Cir. 1996) 90 F.3d 148, 150, 153 [probable cause found where dog alerted police to narcotics in defendant's car]; *United States v. Williams* (5th Cir. 1995) 69 F.3d 27, 28 [probable cause found where dog alerted police to car driven by defendant]; *United States v. Banks* (11th Cir. 1993) 3 F.3d 399, 400–402 [probable cause found where dog alerted police to an express mail package containing narcotics]; see also *Maryland v. Pringle* (2003) 540 U.S. 366 [157 L.Ed.2d 769, 124 S.Ct. 795] [probable cause found to arrest all three people in a car on a theory that any or all of them had control over the narcotics found in the car].)[2] This evidence, coupled with the minor's denials that he possessed any keys, created the probability of criminal activity when Corporal Garcia felt what he believed to be keys in the minor's pocket.

■ Based on this evidence we also conclude that Corporal Garcia had probable cause to arrest the minor, and that the search conducted was justified incident to that arrest, even though the search itself preceded the formal arrest of the minor. "An officer with probable cause to arrest can search incident to the arrest before making the arrest. (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 111 [65 L.Ed.2d 633, 100 S.Ct. 2556]; *People v. Adams* (1985) 175 Cal.App.3d 855, 861 [221 Cal.Rptr. 298].)" (*People v. Limon* (1993) 17 Cal.App.4th 524, 538 [21 Cal.Rptr.2d 397].)[3] The fact that a defendant is not formally arrested until after the search does not invalidate the search if

[2] The minor argues at length that the dog-sniffing evidence is insufficient to support a finding of probable cause. He contends that the federal cases cited by respondent are not applicable to the instant case, because in all of them the dogs alerted the police to objects containing drugs, not to the scent of an individual person. He further contends that that respondent's reliance on *Maryland v. Pringle, supra,* 540 U.S. 366 [124 S.Ct. 795] is similarly misplaced, because unlike the drugs not indicating any particular owner, the scent of a person is individual. Probable cause, however, is a "fluid concept" requiring only a "substantial chance of criminal activity, not an actual showing of such activity." (*Illinois v. Gates, supra,* 462 U.S. at pp. 232, 243–244, fn. 13.) Taken as a whole, the record supports the conclusion that Corporal Garcia had probable cause to arrest the minor.

[3] Citing to *Knowles v. Iowa* (1998) 525 U.S. 113 [142 L.Ed.2d 492, 119 S.Ct. 484], the minor argues that the decision in *Rawlings v. Kentucky, supra,* 448 U.S. 98, finding that a search preceding an arrest qualified as search incident to arrest has "arguably" been called into doubt. In *Knowles v. Iowa,* the court refused to extend the search incident arrest exception to the warrant requirement to include situations where an officer had probable cause to arrest, but instead only issued a traffic citation. (*Knowles v. Iowa, supra,* 525 U.S. at pp. 115–116.) The issue there was whether a search was permissible based on the issuance of citation rather than a formal arrest, not whether it was permissible for a search preceding a formal arrest to qualify

probable cause to arrest existed prior to the search and the search was substantially contemporaneous with the arrest. (*Rawlings v. Kentucky, supra,* 448 U.S. at p. 111; *People v. Adams, supra,* 175 Cal.App.3d at p. 861.) The record shows the minor was immediately placed under formal arrest after the search. Accordingly, we find the search was contemporaneous with the arrest.

## DISPOSITION

The order denying the minor's motion to suppress evidence and the juvenile court's jurisdictional and dispositional findings are affirmed.

Kay, P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 11, 2005.

---

as a search incident to arrest. Accordingly, we find nothing in *Knowles v. Iowa,* as calling into doubt *Rawlings v. Kentucky.*