Filed 6/21/13  P. v. Lowe CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TRENELL ANTHONY LOWE,<br><br>    Defendant and Appellant. | F062767<br><br>(Super. Ct. No. F10902709)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Heather S. Gimle, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

A jury convicted defendant Trenell Anthony Lowe of possession of methamphetamine.  Lowe admitted that he had a prior felony strike conviction and had

served two prior prison terms. The trial court sentenced him to two years eight months in state prison.

On appeal, Lowe contends that the trial court erred by denying his motion to suppress because his detention and search by the police were illegal. In addition, he argues: (1) In admitting the enhancement allegations, he did not affirmatively waive his right to confront witnesses and his privilege against self-incrimination; (2) the trial court improperly offered a 28-month sentence in exchange for a guilty plea and therefore his sentence after jury trial should be no more than 28 months; (3) he is entitled to additional presentence conduct credits; and (4) the abstract of judgment must be corrected. The People concede that the abstract of judgment should be corrected but otherwise disagree with Lowe.

We conclude that the detention and search were legal. We agree with the parties that the abstract of judgment must be corrected. In all other respects, we affirm the judgment.

### *FACTUAL AND PROCEDURAL HISTORIES*

On the morning of April 29, 2010, Fresno police detectives working in the street-level narcotics enforcement team conducted a search of an apartment on North Peach Avenue pursuant to a search warrant. Inside the apartment, the police found marijuana packaged in individual plastic baggies in a manner that appeared to be prepared for $5 sales. There were also two people in the apartment; both were initially detained and one was arrested.

After the search was completed, detectives Tomas Cantu and Brannon Kirkland waited in the apartment for a police wagon to transport the arrestee. As the detectives waited, they observed people walk up to the apartment in an apparent attempt to purchase narcotics. Cantu locked the security screen door to the apartment, while the wooden front door remained open. Lowe approached the apartment and tried to open the screen door. Cantu opened the door; he was wearing a bulletproof vest with a police badge and a thigh

holster holding his duty weapon. Upon seeing Cantu, Lowe turned around and placed his hands behind his back. Lowe had a $10 bill in his right hand.

Kirkland noticed a bulge in Lowe's right sock. Kirkland asked about the bulge and Lowe responded that it was nothing. Cantu patted Lowe down for weapons and removed an item from Lowe's sock which turned out to be about two feet of toilet paper wrapped around a plastic baggie containing an off-white substance. Cantu suspected that the off-white substance was cocaine base. At that point, Cantu arrested Lowe and Kirkland read him his *Miranda*[1] rights. Lowe was handcuffed and placed on the floor against the living room wall. About five minutes after being arrested, Lowe sighed and said he was only there "to buy a nickel to roll a cabbie." Cantu explained that a "nickel" refers to an amount of something (in this case, marijuana) that is sold for $5, and a "cabbie" is a marijuana cigarette that is laced with cocaine. Later testing showed that the off-white substance found in Lowe's sock was .14 gram of methamphetamine, a usable amount.

The Fresno County District Attorney filed an information alleging a single count of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). The information also alleged that Lowe had a prior serious or violent felony (strike) conviction (Pen. Code,[2] §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and had served two prior prison terms (§ 667.5).

Lowe filed a motion to suppress "all evidence and observations obtained without an arrest or search warrant." In his motion papers, Lowe argued that his detention was outside the scope of the search warrant for the apartment on North Peach Avenue, and the detectives did not have sufficient reasonable suspicion to detain and search him.

---

[1]*Miranda v. Arizona* (1966) 384 U.S. 436.

[2]Subsequent statutory references are to the Penal Code.

3.

Therefore, he argued, the detention and search were illegal and the fruits of the illegal search—the drugs found in his sock and his postarrest statements—must be suppressed.

At the hearing on Lowe's suppression motion, Cantu and Kirkland testified. Cantu explained that, prior to the search, the apartment on North Peach Avenue had been under surveillance and, on two occasions, a confidential informant purchased narcotics at the apartment. At least eight police officers participated in the search. After the search was completed and Cantu and Kirkland were waiting for the police wagon, Cantu noticed "people were coming up to the door, what appeared to be attempting to purchase narcotics." Cantu locked the security screen door "for officer safety reasons, [so] people don't walk in and find us in there."

According to Cantu, Lowe "kind of half jogged up" to the apartment and "seemed to be in a hurry." Lowe tried to open the door. Cantu stated that Lowe did not knock on the door, "he went directly for the doorknob." Kirkland, however, believed that Lowe knocked and at the same time tried to open the door. Cantu opened the door, and Lowe—without any instruction from Cantu—"immediately turned around and placed his hands behind his back." According to Kirkland, Cantu asked Lowe, "what do you need?" or "what do you want?" or words to that effect. At the suppression hearing, Cantu could not recall what he said to Lowe when he opened the front door, but it could have been something like, "what's going on" or "what are you looking for."

Cantu testified that he then took custody of Lowe because he did not know whether Lowe was a resident of the apartment. Cantu saw that Lowe had a $10 bill in his hand and a bulge in one of his socks. Cantu searched Lowe because he "didn't know if he was a resident" of the apartment subject to the search warrant and also "just for officer safety reasons" since Lowe could have been armed. Cantu testified, "It's always possible to have a weapon, that's why when he turned around … [and] put his hands like if he's going to be arrested, I merely went down and grabbed him and patted him down for weapons." During the pat-down, Cantu removed the item causing a bulge in Lowe's

4.

sock. Cantu described it as "being a ball," "about a ball size, tangerine size." Kirkland testified that the bulge was probably the diameter of a 50-cent piece or slightly larger. Lowe's attorney elicited testimony that Kirkland had described the bulge as the size of a nickel at the preliminary hearing.

After the witnesses were excused, the court heard argument from counsel. Lowe's attorney argued that a person who knocks on the door of a house that is being searched is not automatically subject to search. Further, when a police officer conducts a pat-down search for weapons, if the officer feels something, it must be reasonable to suspect that it is a weapon. Lowe's attorney argued, "[I]n this case, a small bulge of soft tissue in a sock would not be reasonable for a person to believe that that's a weapon, therefore, [an officer] cannot place their hands within that sock to remove [it] .… [This] is now a search, an actual complete search, not just a pat-down anymore."

The deputy district attorney argued that the detectives had sufficient reason to detain and search Lowe. She cited the facts that the apartment was a known "drug house" selling $5 bags of marijuana, Lowe went to the door "prepared" with $10 in his hand, and he reached for the doorknob "to enter as if he had been there before .…" These circumstances gave Cantu reason to detain Lowe. The deputy district attorney continued: "And then based upon the totality of everything, I believe he had the reasonable suspicion to actually search the Defendant based upon the knowledge of the house, the money in his hand, and this … was called … a noticeable bulge on the Defendant's sock, that based upon all of that, the officers had their own reason to believe the Defendant was attempting to engage in criminal activity, and based upon that, had their own authority, then, to search the Defendant above and beyond the warrant." Lowe's attorney responded that the circumstances of Lowe approaching the apartment with money in his hand might raise a suspicion that he wanted to *buy* drugs but not that he *had* drugs.

After hearing the parties' arguments, the court denied Lowe's motion to suppress. The court explained:

"The Court is mindful of the directives of the California Supreme Court in the 1995 case of [*People v. Glaser* (1995) 11 Cal.4th 354]. Defense counsel does recognize, rightfully so, that under the circumstances presented in this case, Officer Cantu, Officer Kirkland, and any other officer on the premises did have the absolute right to detain Mr. Lowe for questioning. In addition, they had the absolute right to conduct at least a minimal search for their own protection.

"There was no sufficient evidence presented that Mr. Lowe was an occupant of the premises. That being said, Glaser stands for the proposition that if the person detained—in this case, Mr. Lowe—is not an occupant, further detention is proper only if justified by other specific articulable facts connecting him to the criminal activity suspected to be occurring on the premises or establishing a danger to the officers if the person is released.

"The Court finds that there was, in fact, specific … articulable facts connecting Mr. Lowe to the premises being searched. His prolonged detention, the subsequent search, and the arrest without a warrant were all reasonable under the circumstances given the totality of the circumstances, and the Court denies the motion."

The case went to trial, and a jury found Lowe guilty of the single charge of possession of a controlled substance. In a bifurcated proceeding, Lowe admitted that he had been convicted of a prior serious felony and had served prior prison terms.

The trial court imposed a mitigated term of 16 months, doubled to 32 months because of the prior serious felony conviction. (§§ 667, subd. (d)(1), 1170.12.) Exercising its discretion, the court struck the two enhancements for prior prison terms "in the interest of justice." Lowe received two days' credit for time spent in custody and no additional conduct credit.

## DISCUSSION

### I. Motion to suppress

"On appeal from the denial of a motion to suppress, we defer to the trial court's factual findings, express or implied, where supported by substantial evidence and exercise our independent judgment in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment." (*People v. Lucatero* (2008) 166

Cal.App.4th 1110, 1114; see also *People v. Glaser, supra,* 11 Cal.4th at p. 362 (*Glaser*).) We will affirm if the ruling is correct on any theory of law applicable to the case, even if different from the reasons given by the trial court. (*People v. Evans* (2011) 200 Cal.App.4th 735, 742; *People v. McDonald* (2006) 137 Cal.App.4th 521, 529.)

Lowe contends the circumstances of this case did not permit the detectives to detain him in the apartment. We disagree.

In *Glaser*, cited by the trial court in making its ruling, a team of six police officers, including an investigator assigned to a narcotics task force, executed a search warrant at a house. (*Glaser*, *supra*, 11 Cal.4th at p. 362.) When the officers arrived at the house, the defendant's pickup truck was parked in the driveway. The defendant had just arrived; he had gotten out of his truck and walked to a gate to the backyard of the house, and he was about to open that gate. (*Id*. at p. 360.) The defendant heard the officers yell something at him, but he did not understand. Eventually, he understood that officers were ordering him to lie face down on the gravel driveway at gunpoint. An officer handcuffed the defendant and led him into the house. (*Id*. at p. 361.)

The defendant argued that the police did not have a reason to detain him as a mere visitor at a house being searched, but our Supreme Court disagreed. (*Glaser*, *supra*, 11 Cal.4th at pp. 363-365.) The court concluded that the "brief detention of defendant was justified by the need to determine what connection defendant, who appeared to be more than a stranger or casual visitor, had to the premises, and by the related need to ensure officer safety and security at the site of a search for narcotics." (*Id*. at p. 365.) The court outlined the following general rule:

> "When, in the course of initiating a search under warrant of a private residence for illegal drugs or related items, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot immediately be determined without detaining the person, the officers may constitutionally detain him or her for the period of time required and in the manner necessary to make those determinations and to protect the safety of all present during the detention…. If the person

7.

is determined not to be an occupant, further detention is proper only if justified by other specific, articulable facts connecting him or her to the criminal activity suspected to be occurring on the premises or establishing a danger to the officers if the person is released." (*Glaser*, *supra*, 11 Cal.4th at p. 374.)

Here, Lowe approached an apartment where marijuana was being sold. He appeared to be in a hurry, he had $10 in his hand, and he grabbed the doorknob of the screen door, suggesting familiarity with the location. When Lowe saw the police detective, he turned around and put his hands behind his back, which, under the circumstances, could reasonably be interpreted as showing consciousness of guilt. We conclude these were sufficient facts to justify Lowe's initial detention.

This case is distinguishable from *People v. Gallant* (1990) 225 Cal.App.3d 200, relied upon by Lowe. In *Gallant*, police officers executed a search warrant that authorized the search of a woman and the single-family residence where she lived. While the officers were at the residence, they saw the defendant, a man, park in front of the residence, walk up to the front of the house, and knock on the door. (*Id*. at p. 203.) "[T]he police did not observe any weapons or anything else about defendant which suggested criminality," and "[t]here was nothing in the manner of defendant's approach to the door which made the police suspect him of any criminal conduct." (*Ibid*.) An officer opened the door with his gun drawn and detained the defendant. (*Id*. at p. 204.) Under those circumstances, the appellate court concluded there were no facts connecting defendant to the house being searched or to the criminal activity suspected at the house, and his detention was unlawful. (*Id*. at pp. 208, 210-211.) In contrast, specific facts in this case—including Lowe's familiarity with the apartment, the $10 in his hand, and his reaction to seeing the police—connected Lowe to the apartment and the suspected criminal activity. Despite his claim that he was an "innocent bystander," Lowe also recognizes that the facts suggest he went to the apartment to buy marijuana, but he argues that this affirmatively demonstrates he was not involved in the sale of marijuana. Even

8.

so, the circumstances indicate a connection to the criminal activity occurring at the apartment, and Cantu and Kirkland were justified in detaining Lowe to investigate.

As part of the initial detention, the detectives were also permitted to check Lowe for weapons. (See *Terry v. Ohio* (1968) 392 U.S. 1, 27; *Glaser*, *supra*, 11 Cal.4th at pp. 363-364.) Lowe concedes that, assuming the initial detention was warranted, a "*Terry* search" was also permitted. Cantu testified that he checked Lowe for weapons and removed the item causing a bulge in his sock. Lowe contends that the wad of toilet paper was, in effect, a closed container, and the detective was not allowed to open and search it because there was no evidence indicating that Cantu believed the bulge was a weapon.[3] Although Cantu did not testify about why he removed the item causing a bulge in Lowe's sock, we hesitate to conclude that it was improper to remove the item to determine whether it was dangerous. "'The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations. [Citations.]' [Citation.] The Fourth Amendment has never been interpreted to '"require that police officers take unnecessary risks in the performance of their duties." [Citation.]' [Citation.]" (*People v. Collier* (2008) 166 Cal.App.4th 1374, 1378.)

In any event, we agree with the Attorney General that the search was reasonable under the circumstances. When an officer lawfully pats down a suspect's outer clothing "and feels an object whose contour or mass makes its identity immediately apparent" as

---

[3]As a preliminary matter, we reject the Attorney General's claim that Lowe has forfeited this issue because he did not raise it in his motion or develop testimony on the issue. Lowe's attorney sufficiently raised the issue during oral argument. He argued: "[E]ven if the detention was justified … there has been no testimony whatsoever from the People to show that that pat-down search would have led them to believe that that bulge was a weapon. In a Terry pat-down, an officer, when they feel an object, say any type of object, soft object, a wallet, something like that, in that case, once they feel the object, it has to be reasonable for them to think that it is a weapon."

9.

contraband, the officer may nevertheless lawfully remove the object. (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373, 375-376.) In reaching the determination that an object is contraband, the officer may take into account surrounding circumstances. (*People v. Dibb* (1995) 37 Cal.App.4th 832, 836-837.) "The critical question is not whether [the officer] could identify the object as contraband based on only the 'plain feel' of the object, but whether the totality of the circumstances made it immediately apparent to [the officer] when he first felt the lump that the object was contraband." (*Ibid.*) Here, the detectives were at an apartment where drugs were sold, people were coming up to the apartment apparently trying to buy drugs, Lowe arrived with $10 in his hand, and when he saw a police officer at the apartment, he turned around and put his hands behind his back. Lowe had a bulge in his sock, which the Attorney General points out is an unusual location not commonly utilized to carry everyday items. When asked about the bulge, Lowe said it was nothing. We conclude these circumstances supported Cantu's apparent determination that the bulge contained contraband. As a consequence, the removal of the item was permissible, and the trial court properly denied the motion to suppress. (See, e.g., *ibid.*; *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1238-1239 [motion to suppress car keys found in minor's pocket properly denied where circumstances included officer feeling car keys during pat-down search after minor previously denied knowledge of them].)

## II.     *Admission of enhancement allegations*

After the jury was sent out to deliberate, the court asked both counsel for "a more definitive status on the possible trial of the bifurcated issues." Lowe's attorney responded, "I discussed those issues with my client. He, at this point, he would be waiving jury trial and he admits to those priors." The following discussion then occurred:

> "THE COURT: Now, you have a constitutional right, in the event that you are found guilty of Count One in this case, you have the constitutional right to have this very same jury decide whether it's true that

10.

you suffered the prior convictions that are alleged in the case. [¶] Do you understand that?

"THE DEFENDANT: Yeah.

"THE COURT: Okay. Now, if you waive the right to have that jury decide those issues, then that leaves several options. It can be submitted to me and I will decide whether those have been proved beyond a reasonable doubt or you can admit them. [¶] Now, as of right now I'm not going to make you make that decision as to admitting or just submitting the matter on a court trial. What I'm interested in right now is, do you give up your right to have this jury decide the issue of those prior convictions?

"THE DEFENDANT: Yes. [¶] … [¶]

"THE COURT: Okay. [Defense counsel], you've already made comments on this issue, but at this moment do you join in the waiver of the right to have this jury try the issue of prior convictions?

"[Defense counsel]: I do, your Honor.

"THE COURT: Okay. Then, the court does find a knowing, intelligent, and voluntary waiver of the right to jury trial on the issue of any prior convictions alleged in the Information. [¶] Now, the next step is in the event that you are convicted of Count One in this case the Court does need to make determinations on the issues of those prior convictions. There are two ways that can happen. The People can present proof of the prior convictions in a proceeding that would, first of all, identify you as … the subject of records that they would introduce into evidence. I would then review those documents and determine if you have in fact been convicted of the offenses as stated and whether you have served prior prison terms for them. I would be the sole trier of fact. [¶] The other option is that after you and [defense counsel] review all of those records, if you agree that that is a true and accurate record of your prior convictions, then you can simply admit that those are true.

"THE DEFENDANT: All right.

"THE COURT: Okay. Now, if you are going to have [the prosecutor] prove those priors up as opposed to admitting them, then I'm going to instruct [the prosecutor] to be prepared to proceed with the evidentiary hearing on identification and then the matter can be submitted to

11.

me on the basis of the written documents that he will admit into evidence. [¶]  How do you wish to proceed?

"THE DEFENDANT:  I'm willing to admit them.  They're true.

"THE COURT:  You're going to admit that they're true?

"THE DEFENDANT:  Yeah.

"THE COURT:  Then, let me go through those with you now.  In the event that you are convicted, then these findings will become part of the process of this trial.  If you are found not guilty, then these admissions have no meaning and … the record of them will be stricken, okay."

The court then went through each enhancement allegation.  The information alleged one felony "strike" conviction and two prison priors.  Lowe admitted the allegations and his attorney stipulated to the factual bases for the admissions.

Generally, before accepting a defendant's guilty plea, the trial court must advise a defendant and obtain waivers of (1) the privilege against self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers before accepting a guilty plea. (*People v. Mosby* (2004) 33 Cal.4th 353, 359.)  These three rights are referred to as *Boykin-Tahl* rights.  (See *Mosby, supra,* at p. 360.)  On appeal, Lowe contends that, since he was not specifically advised of his right to confront witnesses and his privilege against self-incrimination, his admissions must be set aside.  We conclude that, under the totality of the circumstances, Lowe voluntarily and intelligently admitted the enhancement allegations.

In *People v. Mosby*, *supra*, 33 Cal.4th at page 364, after a jury found the defendant guilty of selling cocaine, he was told that he had the right to a jury trial on the allegation that he had a prior conviction.  The defendant waived that right and admitted the truth of the allegations.  On appeal, the defendant argued that the trial court committed reversible error by not advising him of his rights to remain silent and to confront witnesses.  "The Court of Appeal disagreed, stating:  'It would exalt a formula (*Boykin-Tahl*) over the very standard that the formula is supposed to serve (that the plea is intelligent and voluntary) to

12.

suggest that a defendant, who has just finished a contested jury trial, is nonetheless unaware that he is surrendering the protections of such a trial' when after being advised of the right to a trial on an alleged prior conviction the defendant waives trial and admits the prior." (*Ibid.*) Our Supreme Court agreed with the Court of Appeal, observing that, during the trial, the defendant had exercised his right to remain silent and, through counsel, had confronted witnesses. (*Ibid.*) Under the totality of the circumstances, it was not error to conclude that the defendant voluntarily and intelligently admitted his prior conviction despite being advised of and having waived only his right to a jury trial. (*Id.* at p. 365.)

Likewise in this case, Lowe had just undergone a jury trial, at which he did not testify and his attorney cross-examined witnesses. Lowe points out that there is no evidence in the record that he had entered a guilty plea in the past. He did, however, have extensive previous experience with the criminal justice system. (See *People v. Mosby*, *supra*, 33 Cal.4th at p. 365 [prior experience with criminal justice system relevant to whether defendant knowingly waived constitutional rights].) Under the totality of the circumstances, we conclude Lowe voluntarily and intelligently admitted his prior convictions and prison terms.

### III.    *Alleged judicial plea bargain*

This case was assigned to Judge Vogt the day before the jury trial began. Prior to deciding pretrial motions, Judge Vogt asked both counsel whether there had been previous settlement negotiations in front of other judges. The deputy district attorney stated that it was his understanding that Lowe "was offered 28 months by Judge Conklin when Judge Conklin had jurisdiction over the matter" and later, "Judge Tharpe renewed that 28-month offer, which the defendant turned down .…" The deputy district attorney then told the court, "I do not have an offer for the defendant today." Judge Vogt asked how the 28-month sentence was calculated, and Lowe's attorney explained that he was

"pretty positive" it was a "16-month mitigated term plus one prison prior [one year] and the strike being Romeroed."

Lowe's attorney then asked for a treatment program and a stayed sentence. The deputy district attorney responded that this was a prison case, given Lowe's criminal history and "the sheer number of violations of parole." Lowe's attorney next asked the court, "Is there a possibility then that we can get the previous indicated back so that I can discuss that with my client to see maybe if he changes his mind because at trial, of course, clients do get nervous when they face the reality?"

The court responded:

> "Well, I understand that. But I happened to look through the minute orders and I think based on the consistency of the offer from Judge Conklin through Judge Tharpe in light of the facts of this case that does appear to this court to be something that I could in fact honor without reservation. Those judges, obviously factored in all of the relevant issues that would apply to a sentencing determination here, so at this time, [deputy district attorney], I am inclined to put that indicated back on the table before we bring a jury up, before you call witnesses."

The deputy district attorney disagreed with the court's assessment of the case. The court then addressed both counsel: "I will go ahead and renew that 28-month offer that was extended by Judge Conklin originally.… I'm not going to in any way undercut it, but if that's the last offer that was made by both judges, I'll leave it on the table for a little while longer."

After Lowe spoke with his attorney during a recess, the court asked about "the last offer that was—or indicated that was put there by the Court." Lowe's attorney stated that Lowe had "decided to reject the offer or indicated …." The case went to trial and Lowe was subsequently sentenced to 32 months in prison.

On appeal, Lowe claims that the case must be remanded so that a sentence of no more than 28 months is imposed. It appears that Lowe's argument is that the trial court engaged in improper plea bargaining by offering to sentence Lowe to 28 months if he

14.

were to plead guilty. Lowe contends that he "was improperly punished for rejecting the court's offer and for exercising his right to proceed to trial." We reject Lowe's claim.

A trial court may properly indicate what sentence would be imposed if a given set of facts is confirmed, but it may not engage in plea bargaining over prosecutorial objection. (*People v. Clancey* (2013) 56 Cal.4th 562, 570.) Our Supreme Court recently discussed the difference between proffering an appropriate indicated sentence and engaging in improper judicial plea bargaining. In *Clancey*, *supra*, 56 Cal.4th 562, the court explained, "'[A] court may not offer any inducement in return for a plea of guilty or nolo contendere. It may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right.' [Citations.]." (*Id*. at p. 575.) Instead, "the indicated sentence must be the same punishment the court would be prepared to impose if the defendant were convicted at trial." (*Ibid*.)

Lowe seems to believe he is entitled to a sentence no greater than the indicated sentence proffered by Judge Vogt before trial. An indicated sentence, however, is *not* a promise from the court. (*People v. Clancey*, *supra*, 56 Cal.4th at p. 575.) By indicating a sentence, "the court has merely disclosed to the parties at an early stage—and to the extent possible—what the court views, *on the record then available*, as the appropriate sentence so that each party may make an informed decision." (*Ibid.*, italics added.) After trial and with the benefit of the probation report and any other submissions from the parties, the court was under no obligation to impose the sentence it had indicated before trial.

We agree with the Attorney General that Lowe's claim the trial court "punished" him for choosing to go to trial is mere speculation. Lowe cites nothing in the record to suggest the trial court intended to punish him for choosing to go to trial, and our own review of the record reveals that the court sentenced Lowe based on a careful review of

15.

the facts of the case.[4]  Consequently, we reject Lowe's claim that the case must be remanded for resentencing.

## IV.  *Presentence conduct credit*

Section 4019, which governs the rate at which defendants can earn presentence conduct credit while they are in local custody, has been changed legislatively many times in the recent past.  (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1549.)  Section 4019, subdivision (f), currently provides that prisoners receive four days' credit for every two days spent in actual custody.  This statute expressly provides that it applies prospectively to prisoners whose crimes were committed on or after October 1, 2011.  (§ 4019, subd. (h).)  Lowe committed his crime on April 29, 2010.  Nonetheless, he argues that, based on equal-protection principles, he is entitled to presentence conduct credit under the current statute.

After the parties filed their opening briefs in this appeal, our Supreme Court rejected a similar argument, holding that applying an earlier version of section 4019 prospectively did not violate the equal-protection clause of either the state or federal Constitution.  (*People v. Brown* (2012) 54 Cal.4th 314, 328-330.)  Since then, we addressed Lowe's exact argument.  In *People v. Ellis, supra,* 207 Cal.App.4th at page 1552, we concluded:  "We can find no reason *Brown*'s conclusions and holding with respect to the January 25, 2010, amendment should not apply with equal force to the October 1, 2011, amendment.  [Citation.]  Accordingly, we reject defendant's claim he is entitled to earn conduct credits at the enhanced rate provided by current section 4019 for the entire period of his presentence incarceration."  Given our conclusion in *Ellis*, Lowe's argument that he is entitled to additional presentence conduct credit is without merit.

---

[4]At the sentencing hearing, Judge Vogt stated, "[Counsel], I want you both to understand that quite frankly I have put a great deal of thought into this sentencing ever since Mr. Lowe was convicted.  And I have put considerable thought into the anticipated Romero motion."

## IV.    *Abstract of judgment*

Finally, Lowe points out that the box for section 2933.1 is marked on the abstract of judgment.  The parties agree that this is incorrect because section 2933.1 does not apply.  Rather, section 4019 governs the local conduct credit calculation in this case.  We order the court to correct the error.

## DISPOSITION

The superior court shall modify the abstract of judgment to reflect that section 4019 applies to this case, not section 2933.1.  The superior court shall forward the amended abstract to the appropriate prison authorities.  The judgment otherwise is affirmed.

_____
Wiseman, Acting P.J.

WE CONCUR:


_____
Levy, J.


_____
Detjen, J.

17.