Filed 9/30/16  P. v. Clahr CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER CLAHR,<br><br>      Defendant and Appellant. | A145419<br><br>(San Francisco County<br>Super. Ct. No. 14015015) |

Following the denial of his motion to suppress, defendant Christopher Clahr entered a plea of nolo contendere to carrying a concealed dirk or dagger.  (Pen. Code, § 21310.)[1]  Clahr contends the knife and additional evidence were obtained from an unlawful search that cannot be justified as a search incident to arrest, and the trial court erred in denying his motion to suppress.  We agree and reverse.

### BACKGROUND

Around 2:00 a.m. on June 5, 2014, San Francisco Police Officer Christina Hayes and her partner were on duty in their patrol car when they noticed Clahr driving a green van.  Clahr parked in front of a smoke shop on Polk Street with the van in "the red and partially the yellow" parking zones.  There was a disabled placard on the rearview mirror of the van.  Hayes observed Clahr and a passenger get out of the van and walk into the smoke shop.  Neither of them appeared to be disabled.

---

[1] Further undesignated statutory references are to the Penal Code.

1

Hayes parked and went into the smoke shop. She asked Clahr whether he or his passenger was disabled, and he said no. She asked if he had a valid driver's license, and he said no. Clahr was cooperative but appeared very nervous, and he was sweating and shaking. Hayes and Clahr walked out of the shop to the sidewalk. At this point, she "knew he was not a valid driver, he [was] in violation of a misdemeanor."

On the sidewalk, Hayes patted Clahr down. She felt an object under his shirt at the neck area, and Clahr told her it was a knife. She removed a double-edged knife from around his neck.

The officers learned from dispatch that Clahr's driver's license was either suspended or revoked. Hayes told Clahr his license was suspended and took his keys from him. A metallic container was attached to the keys. Hayes was familiar with metal containers of this type, and they usually held narcotics. She opened the container and found a baggie containing a crystalline substance, which she suspected was methamphetamine. She said, "I see you like ice." Clahr responded, "Yes, I do meth, but I am doing good." Hayes placed Clahr in handcuffs and told him he was under arrest. In response to the prosecutor's question whether anyone "conduct[ed] a search incident to arrest," Hayes said that she did, and she found a Visine bottle with brown liquid in it and a foam container in Clahr's pants pocket that held baggies containing a white powder.[2]

Hayes testified at a joint preliminary and suppression hearing that it was her "practice to pat down everybody because I like to make sure nobody has a weapon." She testified, "When someone commits a violation in my presence, yes, I pat down everybody," and this was her practice at any time of day or night and for any violation of law committed in her presence. Hayes further stated, "It can be someone crossing the street on a red light or someone who is on a suspended license, yes. I pat everybody down."

---

[2] Per police policy, they gave Clahr 20 minutes to call someone to pick up the van, so it would not have to be towed. A friend of Clahr's with a valid license showed up and took the van.

The District Attorney filed a three-count complaint against Clahr alleging felony possession of a controlled substance, cocaine (count 1; Health & Saf. Code, § 11350, subd. (a)), misdemeanor possession of a controlled substance, methamphetamine (count 2; Health & Saf. Code, § 11377, subd. (a)), and misdemeanor carrying a dirk or dagger (count 3; § 21310).

Clahr moved to suppress the items found on his person and his statements to the officers. He argued the patdown search was unlawful because Hayes had no reasonable, articulable suspicion that he had a weapon, and the search of the closed container attached to his key ring was unlawful because it was not a search incident to arrest. The magistrate denied the motion, finding "[p]robable cause [to arrest] existed prior to both searches and the searches were substantially contemporaneous with the arrest." The magistrate observed, "As [Clahr] concedes, at the time officers conducted the pat down search they had probable cause to arrest him for driving on a suspended or revoked license based on his own statement during his initial encounter with the police that he was not a valid driver."

The District Attorney then filed a four-count information charging the three counts alleged in the complaint, plus misdemeanor unlawful display of a disabled person placard (count 4; Veh. Code, § 4461, subd. (c)). Clahr moved to set aside the information pursuant to section 995, arguing again that the evidence was obtained from unlawful searches. The trial court denied Clahr's motion. The same day, the court granted the District Attorney's oral motion to amend the information to change count 1 from a felony to misdemeanor possession of cocaine, pursuant to Proposition 47.

After count 1 was reduced to a misdemeanor, Clahr again moved to suppress the evidence, this time pursuant to section 1538.5, subdivision (g).[3] The parties stipulated to

_____

[3] Section 1538.5, subdivision (g) provides in part, "If the property or evidence relates to a misdemeanor complaint, the motion shall be made before trial and heard prior to trial at a special hearing relating to the validity of the search or seizure." (See *Chivers v. Municipal Court* (1976) 59 Cal.App.3d 929, 933 [after felony charges were reduced to misdemeanors, two defendants were entitled to a special hearing on their motion to suppress under section 1538.5, subdivision (g), even though the issue had been litigated

3

hearing the motion based on the preliminary hearing transcript. Although it expressed concern about Hayes' practice of patting down everyone she observes committing a violation of law, the trial court denied the motion. The court reasoned that a search is allowed incident to arrest, and an arrest "can be based on any infraction or misdemeanor crimes that are committed in the presence of the officer, which we had here" because Clahr was seen driving with a disabled placard. The officer thought Clahr was guilty of a misdemeanor, and it is "permissible for an officer to search first and [then] arrest." The court found the search lawful as a search incident to arrest, not as a patdown search for officer safety, although the court observed, "I think some of the facts can bear that out in this case. It's two in the morning; you're in the Tenderloin. But she [Officer Hayes] didn't really get into that. She really focused on what the crime was, the fact she was arresting him for this misdemeanor."

On June 10, 2015, pursuant to a plea agreement, Clahr entered a plea of nolo contendere to count 3, carrying a dirk or dagger, and the remaining three counts were dismissed. Imposition of sentence was suspended, and Clahr was granted probation for a period of three years.

## DISCUSSION

The only issue in this appeal is the legality of the warrantless patdown search of Clahr.[4] Clahr claims it was an unconstitutional warrantless search. The Attorney General's sole justification for the search is that it was a lawful search incident to arrest.

*Standard of Review*

" 'An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies

---

in a prior motion to suppress at a preliminary hearing when the defendants were charged with felony offenses].)

[4] We have appellate jurisdiction even though the only felony charge was reduced to a misdemeanor under Proposition 47. (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1105.)

4

the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] "The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review." [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review.' " (*People v. Alvarez* (1996) 14 Cal.4th 155, 182.)

"In reviewing the denial of a motion to suppress, we examine 'the record in the light most favorable to the trial court's ruling.' [Citation.] All presumptions favor the trial court's exercise of its power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences, ' "and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." ' " (*People v. Turner* (2013) 219 Cal.App.4th 151, 159.)

*Legal Principles*

"Warrantless searches are presumed to be unreasonable, ' "subject only to a few specifically established and well-delineated exceptions." ' [Citations.] The prosecution bears the burden of demonstrating a legal justification for such a search. [Citations.] If there is a legitimate reason for a search or seizure, an officer's subjective motivation is generally irrelevant." (*People v. Evans* (2011) 200 Cal.App.4th 735, 742.)

One such legal justification is a search conducted incident to arrest. (*People v. Evans*, *supra*, 200 Cal.App.4th. at p. 744 ["a police officer who makes a lawful arrest may conduct a warrantless search of an arrestee's person and the area within his or her immediate control"].) The United States Supreme Court has "held that the authority to conduct a full field search as incident to an arrest [is] a 'bright-line rule,' which [is] based on the concern for officer safety and destruction or loss of evidence, but which [does] not depend in every case upon the existence of either concern." (*Knowles v. Iowa* (1998) 525

5

U.S. 113, 118 (*Knowles*); see *People v. Diaz* (2011) 51 Cal.4th 84, 90 ["As the high court has explained: 'When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. . . . The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved' "], overruled on another ground by *Riley v. California* ___ U.S. ___ [134 S.Ct. 2473, 2485].)

*Analysis*

Clahr concedes that Officer Hayes had probable cause to arrest him for misdemeanor violations of unlawful use of a disabled person placard and driving on a suspended or revoked driver's license before she patted him down and discovered the knife. But he argues the patdown search cannot be justified as a search incident to arrest because he was not arrested for either of these traffic violations. We agree. Clahr was not under arrest at the time Hayes patted him down, and there is no evidence that he was ever arrested for these offenses and taken into custody or transported to the police station on account of them.

To be sure, there was nothing to stop Hayes from arresting Clahr for displaying the disabled placard or for driving with a suspended or revoked license. (Veh. Code, §§ 4461, subd. (c); 14601.1, subd. (b)(1); 40303, subd. (b)(10).) Moreover, under *Atwater v. City of Lago Vista* (2001) 532 U.S. 318, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." (*Id*. at p. 354; see *People v. McKay* (2002) 27 Cal.4th 601, 613, 619; *People v. Espino* (2016) 247 Cal.App.4th 746, 763, review granted Aug. 24, 2016, S235540.[5]) But that is not

---

[5] Our Supreme Court granted review in *People v. Espino*, and ordered briefing deferred pending decision in *People v. Macabeo*, S221852 (previously at 229 Cal.App.4th 486), which presents the following issue: "May law enforcement officers conduct a search incident to the *authority* to arrest for a minor traffic offense, so long as a

what happened.  The officer simply walked out to the sidewalk with Clahr and searched him.

The United States Supreme Court made clear in *Knowles*, *supra*, 525 U.S. 113, that there can be no search incident to arrest if the officer does not arrest the defendant. In that case, a police officer issued the defendant, Knowles, a citation for a speeding violation, although the officer could have arrested him.  The officer then searched Knowles' car, found marijuana and a pipe, and then arrested him for violation of the state's controlled substances law.  (*Id*. at p. 114.)  Even though Knowles *could* have been arrested for speeding, he was not, as the officer opted to issue a citation instead.  Knowles moved to suppress the evidence on the ground that it was not a constitutional search incident to arrest, and the Supreme Court unanimously agreed.  The high court rejected the Iowa Supreme Court's rationale that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been one to justify the search, and declined to adopt a " 'search incident to citation' " exception to the warrant requirement.  (*Id*. at pp. 116, 118–119; see *People v. McKay*, *supra*, 27 Cal.4th at p. 613, fn. 6 [noting that the Supreme Court in *Knowles* "held that the exception for a search incident to a custodial arrest could not be applied where no custodial arrest had occurred"].)[6]

custodial arrest (even for an unrelated crime) follows?"  (See California Supreme Court's "Pending Issues: Criminal," at https://www.courts.ca.gov/13648.htm> [as of Sept. 30, 2016].)

[6] Courts in other jurisdictions support this point. (See, e.g., *Bennett v. City of Eastpointe* (6th Cir. 2005) 410 F.3d 810, 824 ["The mere fact that an officer has the *authority* to arrest an individual does not, and never has, automatically, permitted the officer to conduct a patdown search should he choose *not* to effectuate the arrest. [(*Knowles, supra*, 525 U.S. at pp. 117–119.)]  For an officer to conduct a search incident to arrest, there must be an *actual arrest*.  Otherwise, unless the officer points to specific facts that demonstrate reasonable suspicion that the individual is armed and dangerous, the Fourth Amendment tolerates no frisk."]; *United States v. Jackson* (7th Cir. 2004) 377 F.3d 715, 717 [*Knowles* "instantiates the principle that the reasonableness of a search depends on what the officers actually do, not what they might have done" and "explained it is *custody*, and not a stop itself, that makes a full search reasonable"].)

In the matter before us, Clahr was arrested for carrying a dirk and dagger, but only *after* Hayes had pat searched him and found it (and eventually the cocaine and methamphetamine). The search that resulted in the seizure of the dirk and dagger was not permissible under the search-incident-to-arrest exception to the warrant requirement of the Fourth Amendment.

The Attorney General's counterarguments are not persuasive. She contends that the patdown search was a lawful search incident to arrest because it was "substantially contemporaneous" with Clahr's arrest. She cites *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1239–1240, *Rawlings v. Kentucky* (1980) 448 U.S. 98, 111 (*Rawlings*), and *People v. Gonzalez* (1989) 216 Cal.App.3d 1185 (*Gonzalez*). It is true that these cases generally stand for the proposition, "The fact that a defendant is not formally arrested until after the search does not invalidate the search if probable cause to arrest existed prior to the search and the search was substantially contemporaneous with the arrest." (*In re Lennies H.*, *supra*, 126 Cal.App.4th at pp. 1239–1240; see *Rawlings*, *supra*, 448 U.S. at p. 111 ["Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."]; *Gonzales*, *supra*, 216 Cal.App.3d at p. 1189 ["If [the officer] had probable cause to believe [the defendant] possessed illegal drugs, the search and seizure are justifiable as incident to a lawful arrest. It matters not that they occurred before a formal arrest"].) But in each of these cases, the arresting officer had, at the time of the search, probable cause to arrest the defendant for an offense for which the defendant was subsequently arrested.[7] We do not read these

---

[7] In *In re Lennies H.*, *supra*, 126 Cal.App.4th at pages 1239–1240, a police officer was investigating a carjacking and already had probable cause to arrest the defendant for the carjacking at the time he was searched and the keys to the stolen car were found in defendant's pocket; he was arrested immediately thereafter for the carjacking. In *Rawlings*, a defendant claimed ownership of a sizeable quantity of illegal drugs in plain view, in front of police officers, who were in a house executing a search warrant. (448 U.S. at pp. 100–101.) An officer searched the defendant and then placed him under formal arrest. (*Id*. at p. 101.) He was then indicted on drug charges. (*Ibid*.) Similarly, in *Gonzalez*, the Court of Appeal concluded that probable cause to arrest a defendant for

cases to mean that whenever an officer has probable cause to arrest a suspect for a traffic violation or other offense, the officer may conduct a search *without ever arresting the suspect for the original offense*, and then the officer may arrest the suspect for offenses related to the fruits of the search. If that were the rule, *Knowles* would have come out differently. Again, a search cannot be justified as incident to arrest when there is no custodial arrest for the offense for which probable cause existed at the time of the search. (*Knowles*, *supra*, 525 U.S. at p. 118.) This is because it is the " 'potential danger[] lurking in all *custodial arrests*,' " not the existence of probable cause to arrest, that justifies a search incident to arrest. (*People v. Diaz*, *supra*, 51 Cal.4th at p. 90, italics added; *Knowles*, at p. 118.)

Clahr points out that Hayes "did not effect a full custodial arrest for these [traffic] offenses, nor did she say she would have made such an arrest." The Attorney General argues that it does not matter whether Hayes subjectively intended to arrest Clahr for the traffic violations when she patted him down. The Attorney General misses the point. The patdown search here was only legal if it occurred incident to arrest. In this context, Clahr's observation that Hayes did not testify that she intended to arrest Clahr for the traffic violations is relevant in illustrating that the prosecution failed to meets its evidentiary burden to show the patdown search was conducted incident to an arrest. (*Badillo v. Superior Court* (1956) 46 Cal.2d 269, 272 [when defendant shows absence of warrant, "the burden then rests on the prosecution to show proper justification" for the legality of the search and seizure]; Caskey, Cal. Search & Seizure (2016) § 3.5, p. 308 ["once this fact [that the search was without a warrant] is established . . . , the burden of presenting evidence shifts to the prosecution"].)

Finally, the Attorney General contends that Clahr failed to establish that the "offenses for which there existed probable cause at the time of the search were not among

possession of illegal drugs existed before an officer searched the defendant, found drugs in his pants pocket, and arrested him. (216 Cal.App.3d at pp. 1188–1189.)

9

the offenses for which he was arrested."[8] But, as we have mentioned, it was the prosecution's duty, not Clahr's, to prove the asserted justification for the warrantless search. (*Badillo v. Superior Court*, *supra*, 46 Cal.2d at p. 272.) Even though it was undisputed that Hayes had probable cause to arrest Clahr for Vehicle Code violations, she never did, and it was not until after the preliminary hearing and initial motion to suppress that the district attorney added a Vehicle Code charge to the information. This was more than three months after Clahr was arrested.

We conclude that although there was probable cause to arrest Clahr for driving with a suspended license and unlawfully displaying a disability placard, he was not placed under custodial arrest for these offenses, and the search that ensued cannot be justified as a search incident to arrest. Because the Attorney General does not offer any other justification for the search, we need not address Clahr's other arguments. The motion to suppress was erroneously granted.

## DISPOSITION

The order denying Clahr's motion to suppress evidence is vacated, and the matter is remanded to the trial court with instructions that Clahr be permitted to withdraw his guilty plea.

---

[8] The Attorney General mistakenly refers to the potential charges that might have been filed against Clahr relating to driving with a suspended or revoked license as codified in Penal Code sections; they are actually found in the Vehicle Code, and were never charged.

10

                         _____

                         Miller, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.