Filed 3/16/1  P. v. Steffin CA2/75

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ANDREW STEFFIN, Defendant and Appellant. | B256102 (Los Angeles County Super. Ct. No. LA075017) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

In this appeal, Andrew Steffin contends that the "spider crawl" method of a patdown performed by a police officer after a traffic stop under *Terry v. Ohio* (1968) 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (*Terry*) was unlawful, and that the trial court should have granted Steffin's motion to suppress the bag of methamphetamine found in his pocket during the search.

Following the denial of his motion to suppress, on May 2, 2014 Steffin pleaded no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), a felony,[1] and was placed on probation and drug treatment under Proposition 36 (Pen. Code, § 1210.1).  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.  *Testimony at the Suppression Hearing*

Witnesses testified to the following facts at the suppression hearing held on April 29, 2014:

### 1.  *The Traffic Stop*

Los Angeles Police Officer Matthew Mauldin and his partner were part of an undercover narcotics team working in the San Fernando Valley on the evening of June 30, 2013.  They suspected individuals whom they watched entering and leaving a

---

[1]     On November 4, 2014, the voters approved Proposition 47, which amended Health and Safety Code section 11377, subdivision (a), effective November 5, 2014.  Proposition 47 provides, with certain exceptions, that the crime of possession of a controlled substance is a misdemeanor, not a felony.  Proposition 47 also added Penal Code section 1170.18, which authorizes specified persons previously convicted of a felony possession charge to petition for recall of the sentence and resentencing.  The question of what effect, if any, Proposition 47 may have on Steffin's conviction and sentence is not before us in this appeal.

house over a period of time were purchasing illegal drugs at the residence. The officers also noticed a woman pacing in the driveway and talking on her cell phone. The woman stopped pacing when Steffin pulled up in his car. The woman got into the front passenger seat with Steffin, and they drove off.

Mauldin and his partner followed Steffin. At that time, Mauldin and his partner used a cell phone to call Officer Jose Gonzalez, who was part of the undercover narcotics team, to assist in following Steffin. Mauldin observed Steffin making an unsafe lane change without using his signal, in violation of the Vehicle Code. Steffin then entered a motel parking lot and stopped. Mauldin pulled into the parking lot behind Steffin's car. Gonzalez also drove into the parking lot.

All three officers exited their vehicles and approached Steffin's car. Mauldin and Gonzalez walked up to the driver's side window where Steffin was seated. Mauldin identified himself by showing his police badge, and Steffin moved his right hand towards the center console of the vehicle, then "made an abrupt movement and dropped a black object in between his legs." Mauldin believed the object could be a weapon or drugs, and asked Steffin to get out of the car. Steffin complied, and Gonzalez conducted a patdown.

2. *The Patdown of Steffin*

After Steffin stepped out of the car, Gonzalez "patted him down for weapons." When Gonzalez patted down Steffin's left side, he "felt a granular texture in his left front pant pocket." Based on his training and experience, he believed the object was methamphetamine. Gonzalez testified, "I felt the object. I recognized it to be methamphetamine." Gonzalez described the bindle as "a nickel-sized object." When he was performing the patdown, Gonzalez touched only the outside of Steffin's clothes.

Gonzalez testified that, in performing the pat down, he used the "spider crawl" method he had learned at the police academy. Gonzalez explained: "First [I] started on the right-hand side of his body, and I began to do a spider crawl on his shoulders down to his arm, and then I began doing the waist in the front and then the front pockets . . . [a]nd then I went to the left side." On cross examination, Gonzalez testified as follows:

3

"Q . . . How did the object feel as you were doing this spider crawl down his leg?

"A I felt a small bindle with a granular texture.

"Q Did you squeeze it?

"A When I do a spider crawl, I technically do squeeze. Yes.

"Q So as you reached his pocket, you squeezed his pocket and you felt a granular bindle, as you said?

"A Correct.

"Q So you—this was not really a pat-down. You were not tapping his body. You were doing a spider crawl where you were squeezing; correct?

"A Yeah, in the police academy, we were trained to do spider-crawl searches."

Once Gonzalez felt the object and recognized that it was methamphetamine, he reached into Steffin's left front pocket and recovered "a clear plastic bindle with an off-white, crystalline substance resembling methamphetamine." Gonzalez also recovered a cell phone and a wallet from inside Steffin's pocket. When Gonzalez finished his patdown, Mauldin looked in the vehicle and observed a cell phone inside.

## B. *Counsel's Argument and the Court's Ruling*

Steffin did not testify at the suppression hearing. Following the presentation of evidence, Steffin's counsel argued the methamphetamine should be suppressed because the manner in which Gonzalez conducted the patdown exceeded the permissible scope of a *Terry* search.[2]

The trial court denied the suppression motion, concluding that the officers acted reasonably in conducting a *Terry* patdown for a weapon for their own safety. The court noted that Gonzalez did not need to perform much squeezing or manipulating to

---

[2] Steffin's counsel also argued that there was not sufficient cause for the patdown, but Steffin does not make this argument on appeal.

determine that the object was methamphetamine, and held that under these circumstances, the "spider crawl" method was appropriate to search for a weapon.

## DISCUSSION

### A. *Standard of Review*

"'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' [Citation.]" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223; accord, *People v. Ayala* (2000) 23 Cal.4th 225, 255 [on motion to suppress, appellate court reviews trial court's factual determinations ""'under the deferential substantial-evidence standard'""'"].)

### B. *Terry and Its Progeny*[3]

When a police officer reasonably believes a suspect he or she "is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown "to determine whether the person is in fact carrying a weapon . . . ." (*Terry*, *supra*, 392 U.S. at p. 24; accord, *Minnesota v. Dickerson* (1993) 508 U.S. 366, 373 [113 S.Ct. 2130, 124 L.Ed.2d 334] (*Dickerson*).) However, the patdown is limited to a search "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Terry*, *supra*, at p. 29.) Further, "[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." (*Adams v. Williams* (1972) 407 U.S. 143, 146 [92 S.Ct. 1921, 32 L.Ed.2d 612].)

---

[3] Whether evidence should be suppressed because it was unlawfully seized is governed by federal constitutional standards. (Cal. Const., art. I, § 28, subd. (f)(2); *Robey v. Superior Court*, *supra*, 56 Cal.4th at p. 1223.)

5

If during a lawful patdown under *Terry* an officer discovers contraband, the officer may seize it. (*Dickerson*, *supra*, 508 U.S. at pp. 370-371, 373.) This has been described as the "'plain-touch'" or "'plain-feel'" exception to the warrant requirement. (See *id*. at p. 371, fn. 1; *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1237 [under "'plain-feel'" exception to the warrant requirement, officers could lawfully seize keys in suspect's pocket during patdown where it was immediately apparent they were contraband linking suspect to carjacking]; *People v. Dibb* (1995) 37 Cal.App.4th 832, 836-837 [officer lawfully seized narcotics during patdown under "'plain-feel'" exception where "the totality of the circumstances made it immediately apparent to [officer] when he first felt the lump that the object was contraband"].)

As the court held in *Dickerson*: "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Dickerson*, *supra*, 508 U.S. at pp. 375-376, fn. omitted.)

However, "[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." (*Dickerson*, *supra*, 508 U.S. at p. 373, citing *Sibron v. New York* (1968) 392 U.S. 40, 65-66 [88 S.Ct. 1889, 20 L.Ed.2d 917] [officer's reach into defendant's pocket to retrieve narcotics exceeded scope of search for weapons and violated Fourth Amendment]; accord, *People v. Collins* (1970) 1 Cal.3d 658, 663-664 [where patdown revealed "little [soft] lump" in pocket, officer's reach into pocket unlawful because soft object in pocket did not "reasonably support a belief that [officer] had located a weapon on defendant's person."]; *People v. Dickey* (1994) 21 Cal.App.4th 952, 957 [where patdown revealed no hard objects but only soft object in pocket, officer's "'squeeze[]'" of soft object and retrieval from pocket was unlawful.)

Steffin relies on *Dickerson* in arguing that by "squeezing" his pocket as part of a "spider crawl" patdown, Gonzalez's search went beyond the limited patdown *Terry*

allows to search for weapons. In *Dickerson*, during a lawful patdown, the officers found a lump in defendant's pocket. At issue was whether the officer could continue to squeeze the lump to determine whether it was contraband. According to the trial court's finding, "the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." (*Dickerson*, *supra*, 508 U.S. at p. 378.)

The court held that once the officer concluded that the pocket did not contain a weapon, his continued manipulation exceeded the scope of a patdown authorized under *Terry* because it was "unrelated to 'the sole justification of the search [under *Terry*:] . . . the protection of the police officer and others nearby.' [Citation.]" (*Dickerson*, *supra*, 508 U.S. at p. 378.) Of significance here, the court noted that the trial court found "that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search . . . ." (*Id.* at p. 379.) The court therefore held that seizure of the cocaine from the defendant's pocket was unconstitutional. (*Ibid*.)

Other courts have similarly held that once an officer determines that an object discovered in a patdown is not a weapon, the officer cannot squeeze, manipulate, or palpate the object without probable cause for a further search. (See *People v. Limon* (1993) 17 Cal.App.4th 524, 536 [once officer believes a concealed object is not a weapon, "the officer cannot continue to palpate the object without probable cause to search the suspect"]; *United States v. Miles* (9th Cir. 2001) 247 F.3d 1009, 1014-1015 [officer unlawfully manipulated small box in suspect's pocket discovered during patdown where officer "did not immediately recognize" box as contraband].)

This case presents facts more similar to those considered by the Fifth District in *People v. Dibb*, *supra*, 37 Cal.App.4th at pp. 836-837, where the court found seizure of narcotics during a patdown lawful where it was "immediately apparent" under the totality of the circumstances that a lump the officer felt was narcotics, and by the First District in *People v. Lee* (1987) 194 Cal.App.3d 975, 985, in which the court found the officer's patdown using a "'grabbing or claw-type of motion'" was necessary to rule out a weapon

7

and "there was no appreciable lapse of time" before the officer realized the object "was a bundle of heroin-filled balloons."  (See also *In re Lennies H.*, *supra*, 126 Cal.App.4th at p. 1238 [seizure of keys from a suspect's pocket during patdown lawful where the "initial 'plain-feel' search" provided probable cause that keys were contraband]; *United States v. Mattarolo* (9th Cir. 2000) 209 F.3d 1153, 1156, 1158 [where officer believed small object in a suspect's pocket might be a pocket knife, the officer lawfully performed a "precautionary squeeze" that "immediately" alerted officer to familiar feel of granular controlled substance].)

We now turn to the facts in this case.


## C. *The Trial Court Properly Denied the Motion To Suppress*

Based on Officer Gonzalez's testimony, the trial court found that, upon feeling the small grainy-textured object in Steffin's pocket, the time it took Gonzalez to conclude the object was a bindle of methamphetamine "was pretty immediate," and was "not something where he had to manipulate it significantly."  We defer to this factual finding by the trial court as supported by substantial evidence under the deferential standard of review.  (*Robey v. Superior Court* , *supra*, 56 Cal.4th at p. 1223.)  As Gonzalez testified, he recognized the object was methamphetamine "[w]ithin a few seconds" of feeling the object.  He also described the time it took him to recognize that the object was methamphetamine as "almost immediate."

Steffin contends that we must still find the search unlawful under *Dickerson*, because Gonzalez discovered the bindle by squeezing his clothing using the "spider crawl" search method, which exceeded the scope of a *Terry* patdown.  However, the facts here are distinguishable from those in *Dickerson* because, according to Gonzalez, he performed the "spider crawl" patdown on Steffin with the explicit purpose of searching for weapons.  This was reasonable in light of the evidence that once Mauldin identified himself as a police officer, Steffin moved his arm and something black fell between his legs.  By contrast, a critical factor in *Dickerson* was that the officer had determined that the suspect did not have a weapon before "'squeezing, sliding and otherwise

8

manipulating the contents of the defendant's pocket,'" and only after manipulating the object did the officer conclude that it was cocaine. (*Dickerson*, *supra*, 508 U.S. at p. 378.)

The fact that an officer "squeezes" the suspect's clothing as he or she moves along a suspect's body instead of merely "patting" the clothing does not mean that the search is unlawful under *Terry*. Rather, the critical factor, as in *Dickerson*, is whether the officer is performing the patdown—whether by squeezing or patting—for the purpose of determining whether the suspect has a weapon. Once the officer has determined that the suspect does not have a weapon, then the patdown must end. At this point it would no longer be lawful to squeeze an item determined not to be a weapon in order to determine whether it is narcotics.

As part of the patdown, Gonzalez felt the granular bag of methamphetamine by a squeeze, but he did not have to manipulate the bag further before identifying it as a "small bindle with a granular texture." Further, his conclusion that the object was narcotics "was almost immediate." Once Gonzalez reached the conclusion that the object in Steffin's pocket was contraband, he had probable cause to remove the object. (*Dickerson*, *supra*, 508 U.S. at pp. 375-376; *In re Lennies H*., *supra*, 126 Cal.App.4th at p. 1237.)

The motion to suppress was properly denied.

## DISPOSITION

The judgment is affirmed.


FEUER, J.[*]


We concur:


PERLUSS, P. J.


ZELON, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.