[No. F022856. Fifth Dist. Aug. 9, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY THOMAS DIBB, Defendant and Appellant.

**COUNSEL**

Richard Glen Boire, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Alison Elle Smith and Kelly Elam, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, J.**—Defendant Larry Thomas Dibb appeals from judgment after he was sentenced to 16-month concurrent prison terms upon his guilty pleas to charges of possessing methamphetamine for sale and possessing a controlled substance in jail. Earlier he had challenged, both in municipal and superior courts, the seizure of a bag containing methamphetamine from his person, based on evidence presented at his preliminary hearing in municipal court. He now claims his motion to suppress should have been granted due to the unlawfulness of the search and seizure. We affirm.

FACTS

On August 20, 1994, Officer Nicholas Chilles of the Modesto Police Department stopped a vehicle in which defendant was a passenger because the vehicle registration had expired and the two occupants were not wearing seat belts. After making inquiry of the driver, Chilles also determined he was driving with a suspended driver's license. The driver consented to a search of his car. Defendant and the driver stepped out of the vehicle.

Chilles observed a black fanny pack on the middle portion of the front bench seat, which defendant grabbed as he got out of the car. Defendant consensually handed it to Chilles when Chilles requested permission to look inside of it. The pack contained a magazine for a .45-caliber Colt pistol, a gram scale which Chilles described in his preliminary examination testimony

as having "the odor of methamphetamine," a small plastic bag, and a beeper. Defendant was wearing a separate beeper. Out of a concern that defendant might be armed with a firearm, Chilles commanded defendant to lift up his shirt to reveal his waistband. Defendant did so; no firearm appeared. Officer Ryan arrived to assist. After he searched the vehicle and performed a patdown on the driver, neither procedure having produced any firearm or contraband, Chilles proceeded to pat down defendant for weapons.

Chilles's patdown of defendant revealed no firearms. He did feel something beneath defendant's pants he thought was "unusual." He described what he felt as "lumpy, and it had volume and mass." Chilles asked what it was. Defendant responded that he had nothing inside his pants. Chilles testified of his suspicions: "I told him, you know, I didn't believe him, that I thought he was hiding something; and I thought—at this point I ruled out a gun, and I thought it might have been a controlled substance based on items I found in the bag he was wearing."

Defendant was then asked by Chilles to pull his pants outward to allow Chilles to look down inside. However, Chilles's view was obstructed by defendant's hands. Chilles then asked Officer Ryan to also patdown defendant. Ryan did so, and reported that he did feel "something down there." Chilles next directed defendant to sit on the street curb and roll up his pants from the bottom in a manner to reveal the top of his socks. As defendant did so, Chilles pushed up defendant's pants a bit further and reached up under the clothing in the area between defendant's left knee and calf to pull out a bag. The package later proved to contain methamphetamine.

## DISCUSSION

Defendant contends that the warrantless search did not come within the automobile exception, which was relied upon by the superior court as providing the exigency excusing the failure to obtain a warrant, nor did it come within the plain-touch exception announced by the United States Supreme Court in *Minnesota* v. *Dickerson* (1993) 508 U.S. 366 [124 L.Ed.2d 334, 113 S.Ct. 2130].

The People acknowledge that the automobile exception does not justify the court's denial of the motion to suppress. However, they argue, there is a valid basis to sustain the court's ruling because Officer Chilles had a reasonable belief, based on the circumstances, that the lump discovered during the patdown was contraband.

Whether an officer's suspicion that an object contained within a person's clothing consists of narcotics, derived at least in part from a

patdown of a person's outer clothing, permits the officer to conduct a full-blown search of the individual or to seize the object felt depends on whether the officer had *probable cause to arrest* the person for narcotics possession; the warrantless search then becomes justified as a search incident to arrest. (*People* v. *Lee* (1987) 194 Cal.App.3d 975, 984 [240 Cal.Rptr. 32].)

The United States Supreme Court essentially agreed with this notion of when "plain feel" or "plain touch" justifies seizure of the object in question in *Minnesota* v. *Dickerson, supra,* 508 U.S. 366 [124 L.Ed.2d 334]. The rationale expressed in *Dickerson* follows analogy to the plain-view doctrine: contraband left open to the view or touch of an officer from a lawful vantage point involves no invasion of the possessor's legitimate expectation of privacy, and thus no search independent of any initial intrusion occurs. (508 U.S. at p. __ [124 L.Ed.2d at p. 345, 113 S.Ct at p. 2137].) Thus, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity *immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's [initial] search for weapons." (508 U.S. at p. __ [124 L.Ed.2d at p. 346, 113 S.Ct. at p. 2137], italics added.)

In the *Dickerson* case, the defendant was subjected to a weapons patdown. No weapons were revealed. The officer did feel a small lump in the defendant's jacket pocket. Only after manipulating the lump with his fingers did he determine it to be cocaine. Thus the initial patdown did not render the identity of the object as a narcotic substance "immediately" apparent. (*Minnesota* v. *Dickerson, supra,* 508 U.S. at p. __ [124 L.Ed.2d at p. 347, 113 S.Ct. at p. 2138].) On the facts before it in *Dickerson*, the Supreme Court found the further search of the defendant's pocket was constitutionally invalid, rendering the seizure of the cocaine unconstitutional. (*Id.* at p. __ [124 L.Ed.2d at p. 348, 113 S.Ct. at p. 2139].)

■ The People argue the instant facts are distinguishable from *Dickerson* essentially because there were additional circumstances which gave Chilles a "reasonable belief" that what he touched during the initial patdown was contraband. We agree that Chilles did have the additional information at that time based on his perception of the odor of methamphetamine on the scales he had earlier located in defendant's fanny pack, the presence of the beepers (which Officer Chilles associated with narcotic sales), and a small plastic bag. The critical question is not whether Chilles could identify the object as contraband based on only the "plain feel" of the object, but whether the totality of the circumstances made it immediately apparent to Chilles

when he first felt the lump that the object was contraband. To put the question in the form stated in *People* v. *Lee, supra,* 194 Cal.App.3d 975, did Officer Chilles have probable cause to arrest defendant for possession of narcotics upon his first touching the object? If he did, the further intrusion upon defendant to roll up his pant legs and to have Chilles reach under his clothing to seize the bag from between his left calf and knee can be justified as a search incident to arrest. If not, this further conduct was unjustified, requiring the suppression of the evidence seized.

Chilles found a scale with the smell of methamphetamine on it. In addition, defendant possessed two beepers and a small plastic bag. When Chilles searched defendant, he felt an unusual lump. The lump was located in an unusual location not commonly utilized to carry everyday items. (Cf. *People* v. *Holt* (1989) 212 Cal.App.3d 1200 [261 Cal.Rptr. 89].) Chilles's tactile perception of the lump, combined with the other circumstances, created a reasonable inference that the lump was contraband. (*People* v. *Limon* (1993) 17 Cal.App.4th 524, 536 [21 Cal.Rptr.2d 397].) ▐ " 'Probable cause for arrest exists "when the facts known to the arresting officer 'would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.' [Citations.]" [Citation.]' " (*Id.* at p. 537.) ▐ Chilles had probable cause to arrest defendant when he first touched the object.

Here, the superior court did not reach the question of whether the search was justified as incident to a *Lee*-type arrest. The court mistakenly found exigency for the officer's failure to procure a warrant based on the automobile exception. It did recognize that a search incident to arrest was an alternate theory that would satisfy the exigency requirement. While the People did not fully spell out a claim that the search was justifiable as "incident to arrest" in the court below, their opposition papers to the motion to suppress filed in superior court did generally cite *People* v. *Lee, supra,* 194 Cal.App.3d 975 as authority allowing seizure of evidence disclosed by a patdown.

The theory that the search was justified as incident to arrest was raised below. Although the trial court failed to base its judgment on this theory, remand is not required. The evidence presented below was uncontradicted. The question of whether the search was incident to a lawful arrest is a pure question of law to be determined by this court. (*People* v. *Limon, supra,* 17 Cal.App.4th at p. 535.)

## DISPOSITION

The judgment is affirmed.

Dibiaso, Acting P. J., and Thaxter, J., concurred.

A petition for a rehearing was denied August 23, 1995, and appellant's petition for review by the Supreme Court was denied November 16, 1995.