Filed 8/21/15  P. v. Gutierrez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D066071 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN324578) |
| GUMERSINDO GUTIERREZ, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Sim von Kalinowski, Judge.  Affirmed.


Elisabeth A. Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Randall D. Einhorn and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

In this case, during the course of a patdown search, a police officer rubbed the flat

palm of his hand over the coin pocket of the jeans defendant and appellant Gumersindo Gutierrez was wearing. When the officer did so, he felt a bulge in the coin pocket; immediately thereafter, his fingertip went over the bulge and the officer felt a granular substance, like salt and some sort of plastic packaging. The officer then reached into the coin pocket and retrieved a small plastic bag that contained what the officer later determined was methamphetamine. Gutierrez was placed under arrest.

The trial court denied Gutierrez's motion to suppress, and, in a trial by the court, sitting without a jury, Gutierrez was found guilty of felony possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).) Gutierrez was sentenced to a term of two years eight months.

On appeal, we reject Gutierrez's contention that, in feeling the granular contents of the plastic bag with his fingertip, the officer exceeded the bounds of a lawful patdown search. At most, the record here shows the fingertip inspection was either a conscious effort to confirm the officer's well-founded suspicion that narcotics were in the coin pocket or an unintentional consequence of the patdown itself. In either event, it did not infringe on Gutierrez's Fourth Amendment rights.

## FACTUAL AND PROCEDURAL HISTORY

Around 9:00 p.m. on October 11, 2013, Escondido Police Officer Pedro Nanez was on patrol in the Mission Grove Place area of Escondido in a marked patrol car with other officers. That area is a high crime area and a criminal street gang, the Diablos, was active in the area. While on patrol, Nanez saw a white car parked on the street with its

2

driver's door open; Gutierrez was standing between the open door of the car and the front seat.

Nanez had known Gutierrez for seven years. Nanez knew Gutierrez was a documented Diablos member, that Gutierrez had recently been released from parole, and that Gutierrez usually drove a green or dark-colored vehicle. Nanez had previously conducted field interviews of Gutierrez and had placed him under arrest.

After observing Gutierrez, Nanez told the driver of the patrol car to return to where Gutierrez was standing. By the time the patrol car was able to turn around and approach the white car, the driver's door was closed, the front passenger door was open and Gutierrez was at the rear of the car, walking away from it. No one was in the car. As Nanez was getting out of the patrol car, Nanez called out to Gutierrez and asked him if he knew who owned the white car; Gutierrez responded, "no."

Given the circumstances he had observed, his knowledge of the area and his knowledge about Gutierrez, Nanez believed there was some likelihood the white car had been stolen and that Gutierrez might be involved in its theft. Nanez thought it was particularly odd that although he had seen Gutierrez standing between the driver's door and the front seat, Gutierrez claimed he did not know who owned the car. Accordingly, Nanez decided to detain Gutierrez until he and the officers who were accompanying him could determine whether they had happened upon a crime.

In the course of detaining Gutierrez, Nanez placed Gutierrez in handcuffs with his hands behind his back. Nanez then conducted a patdown search to determine whether

3

Gutierrez was armed. Gutierrez was wearing a long baggie gray shirt that covered his waistband area. Nanez patted the area under Gutierrez's shirt and around the waistband with the flat palm of his hand; as he did so, he felt a bulge in the coin pocket of Gutierrez's jeans. Nanez testified that: "[A]s I conducted a pat down on his front right -- right waistband area, I felt a small, I would say, bindle in his right coin pocket. [¶] It was very distinctive because as I felt it, I momentarily touched it and then it had a granular texture similar to what I believe it was crystal methamphetamine. [¶] I could also feel through the jeans that the substance was in a packaging that I would say was consistent with plastic." According to Nanez, "I've conducted numerous arrests in the past and I know that subjects or suspects often carry drugs and small plastic bindles which they happen just to burn the tip of it and it makes a perfect container . . . ." Once Nanez felt the plastic bindle in Gutierrez's coin pocket, he reached into the pocket and retrieved it: "I retrieved it because I was very certain that the substance was going to be a controlled substance just based on the texture, the packaging, the coin pocket location, which is very consistent with a lot of people concealing things in that small coin pocket because it's easier to conceal."

After listening to Nanez's description of the patdown search, the trial court denied Gutierrez's motion to suppress. With respect to trial counsel's contention that Nanez acted unlawfully in using his fingertip to feel the granular nature of the substance in Gutierrez's pocket and the plastic bag, the trial court stated: ". . . I find that the officer did touch the item through the jeans. The officer was credible and through a very minimal

4

amount of movement of that item, immediately determined, in this officer's opinion, that he had . . . some sort of controlled substance. And he actually testified specifically methamphetamine. [¶] And I think that out there under those circumstances, the officer formed that opinion and the level of this particular pat down was -- trying to think of the word I want to use -- so uninvasive that it did not rise to the level of manipulating that would then cause that to be a search [in] violation of the need of a -- for a search warrant."

As we indicated at the outset, after Gutierrez's motion to suppress was denied, the trial court, sitting without a jury, found Gutierrez guilty of possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and sentenced him to a term of two years eight months.

## DISCUSSION

On appeal, Gutierrez does not dispute that Nanez had reasonable grounds to detain him and conduct a patdown search for weapons. However, as he did in the trial court, Gutierrez argues that Nanez's search unlawfully exceeded the permissible bounds of a weapons patdown.

### I

The principles governing our review of a trial court's ruling on a motion to suppress are familiar: "In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated.

5

[Citations.]  'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.'  [Citations.]  [¶]  The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard.  [Citations.]  Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review.  [Citations.]  Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to independent review.  [Citations.]"  (*People v. Williams* (1988) 45 Cal.3d 1268, 1301; see *People v. Alvarez* (1996) 14 Cal.4th 155, 182.)

II

The principles governing a law enforcement officer's patdown search are also fairly well established.  When a police officer reasonably believes a suspect he or she "is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown "to determine whether the person is in fact carrying a weapon . . . ."  (*Terry v. Ohio* (1968) 392 U.S. 1, 24 (*Terry*); accord, *Minnesota v. Dickerson* (1993) 508 U.S. 366, 373 (*Dickerson*).)  However, the patdown is limited to a search "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Terry*, at p. 29.)  Further, "[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ."  (*Adams v. Williams* (1972) 407 U.S. 143, 146.)

6

Importantly, if during a lawful patdown under *Terry* an officer discovers contraband, the officer may seize it. (*Dickerson*, *supra*, 508 U.S. at pp. 370–371, 373.) Under this "'plain-touch'" or "'plain-feel'" exception to the warrant requirement, the seizure of narcotics is lawful during a patdown where the totality of the circumstances make "it immediately apparent" to the officer when he first feels a lump that the object is contraband. (*People v. Dibb* (1995) 37 Cal.App.4th 832, 836–837 (*Dibb*); see *Dickerson*, *supra*, 508 U.S. at p. 371, fn. 1; *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1237 [under " 'plain-feel' " exception to the warrant requirement, officers could lawfully seize keys in suspect's pocket during patdown where it was immediately apparent they were contraband linking suspect to carjacking].) "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Dickerson*, at pp. 375–376, fn. omitted.)

On the other hand, "[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." (*Dickerson*, *supra*, 508 U.S. at p. 373, citing *Sibron v. New York* (1968) 392 U.S. 40, 65–66 [officer's reach into defendant's pocket to retrieve narcotics exceeded scope of search for weapons and violated Fourth Amendment]; accord, *People v. Collins* (1970) 1 Cal.3d 658, 663–664 [where patdown revealed "little [soft] lump" in pocket,

7

officer's reach into pocket unlawful because soft object in pocket did not "reasonably support a belief that [the officer] had located a weapon on defendant's person"]; *People v. Dickey* (1994) 21 Cal.App.4th 952, 957 (*Dickey*) [where patdown revealed no hard objects but only soft object in pocket, officer's " 'squeeze[ ]' " of soft object and retrieval from pocket "was unlawful"].)

## III

With these legal principles in mind, we turn to the merits of Gutierrez's argument on appeal. Our immediate difficulty with his contentions is that, in arguing Nanez's search exceeded the bounds of a lawful *Terry* patdown, Gutierrez relies on two factual premises that are not supported by the record. Gutierrez suggests 1) that when Nanez felt the bump in Gutierrez's coin pocket he did not at that point have any basis upon which to suspect the coin pocket contained narcotics and 2) that Nanez then consciously conducted a further search by running his fingertip over the coin pocket and only then had a reasonable suspicion that Gutierrez was carrying contraband.

With respect to the first premise—that feeling the bump by itself did not give Nanez reason to suspect that it contained methamphetamine—the record shows that in fact there was a great deal to suggest the bump contained contraband. At the time Nanez conducted the patdown, Nanez knew that Gutierrez: was a felon and recently released from parole; was the member of a criminal street gang; had been almost inside a car he did not own and shortly thereafter claimed he did not know who owned the car; and was in a high crime area at night. This factual context suggested that Gutierrez was engaged

8

in some form of criminal behavior; indeed these circumstances were sufficiently incriminating that on appeal Gutierrez does not dispute that Nanez had reason to detain him and conduct the *Terry* search. When, under circumstances that suggested Gutierrez was involved in criminal behavior, Nanez then felt a bulge in Gutierrez's coin pocket, based on his experience in investigating drug offenses and use of the coin pocket as a place to secret drugs, Nanez could reasonably suspect the bulge was contraband. On the basis of that suspicion, Nanez could then either confirm his suspicion by using his finger to further examine the bulge or simply retrieve the bulge.

In this regard, the search performed by Nanez was akin to the search permitted in *Dibb*. In *Dibb*, a police officer stopped a car because it lacked current registration and because two occupants were not wearing seatbelts. The defendant got out of the car and was holding a fanny pack; with the defendant's permission, the officer looked inside the fanny pack and found a magazine for a .45 caliber pistol, a scale that smelled of methamphetamine, a small plastic bag and a telephone pager. The defendant also had a pager. When the officer thereafter conducted a *Terry* patdown search of the defendant, he felt something "lumpy [with] volume and mass" under the defendant's pants. (*Dibb*, *supra*, 37 Cal.App.4th at p. 835.) The officer directed the defendant to sit on a street curb, reached under the defendant's pants and pulled out a plastic bag that was between his left knee and calf. The bag contained methamphetamine. In finding that the *Terry* patdown had given the officer probable cause to believe the defendant was concealing contraband, the court stated: "When [the officer] searched defendant, he felt an unusual

9

lump. The lump was located in an unusual location not commonly utilized to carry everyday items. [Citation.] [The officer's] tactile perception of the lump, *combined with the other circumstances*, created a reasonable inference that the lump was contraband." (*Dibb*, *supra*, 37 Cal.App.4th at p. 837, italics added.)

In short, on this record, Nanez's discovery of the lump itself was sufficient to permit him to further investigate his suspicion and consciously rub the coin pocket with his fingertip or simply retrieve the suspected contraband.

Secondly, however, it is by no means clear from Nanez's testimony at the hearing on Gutierrez's motion to suppress that he consciously rubbed his fingertip over the coin pocket. A fair interpretation of Nanez's testimony, and the one apparently adopted by the trial court, would be that, in the course of moving the palm of his hand over the coin pocket, Nanez's fingertip quickly moved over the coin pocket, not consciously, but simply as an incident of the way the patdown occurred, and in that manner the granular character of the contents of the bulge became apparent to Nanez. Under such an interpretation, in which Nanez's fingertip made contact with the coin pocket as an incident of the patdown, no violation of Gutierrez's rights occurred.

Contrary to Gutierrez's argument on appeal, the circumstances in this record are in marked contrast to the ones considered in *Dickerson* and *Dickey*. Gutierrez argues that, after feeling the bulge in Gutierrez's coin pocket as part of the patdown, Nanez's use of the tip of his finger to then quickly rub against the coin pocket went beyond the limited patdown *Terry* allows to search for weapons. In *Dickerson*, during a lawful patdown, the

officers found a lump in defendant's pocket.  At issue was whether the officer could continue to squeeze the lump to determine whether it was contraband.  According to the trial court's finding, "the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." (*Dickerson*, *supra*, 508 U.S. at p. 378.)  The court held that once the officer concluded that the pocket did not contain a weapon, his continued manipulation exceeded the scope of a patdown authorized under *Terry* because it was "unrelated to 'the sole justification of the search [under *Terry*:] . . . the protection of the police officer and others nearby.' [Citation.]" (*Dickerson*, at p. 378.)  Importantly, the court noted that the trial court found "that the incriminating character of the object was not immediately apparent to him.  Rather, the officer determined that the item was contraband only after conducting a further search . . . ." (*Id*. at p. 379.)  The court therefore held that seizure of the cocaine from the defendant's pocket was unconstitutional.  (*Ibid*.)

Here, as we have noted, based on his experience in other narcotics arrests and all the circumstances he observed at the time he first felt the bulge with palm of his hand, Nanez could conclude that the bulge was contraband.  Unlike the officer in *Dickerson*, he did not need to manipulate the coin pocket to be suspicious of its contents and, as found by the trial court, did not manipulate it.  Rather, the record here shows that in quickly rubbing his fingertip over the coin pocket, at most Nanez merely confirmed what the record shows he could and already did reasonably suspect.

11

The circumstances here are in even more marked contrast to those considered in *Dickey*, where police officers came upon the defendant, who was not known to them, in the middle of the day on a rural road. In *Dickey*, the court found the officers did not have reason to detain the defendant in the first instance and conduct a *Terry* search; moreover, the court found that, in any event, in squeezing a soft bulge he felt while patting down the defendant, the officer had exceeded the bounds of *Terry* search. (*Dickey*, *supra*, 21 Cal.App.4th at pp. 955-957.) Here, of course, the totality of the circumstances not only justified a brief detention, but those circumstances were very pertinent in informing Nanez's evaluation of the bulge he felt in the coin pocket.

The motion to suppress was properly denied.

DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

HALLER, J.

12