Filed 4/21/16  P. v. Crowley CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRIAN KEITH CROWLEY,<br><br>        Defendant and Appellant. | A142237<br><br>(Solano County<br>Super. Ct. No. FCR-299785) |

### INTRODUCTION

After the trial court denied defendant's motion to suppress, a jury found him guilty of felony possession of methamphetamine (Health & Saf. Code, § 11377).[1]  The court suspended imposition of sentence and placed him on three years' formal probation, conditioned on, among other things, serving 90 days in the county jail.  The court also imposed numerous fines and fees, including for drug treatment programs, drug and alcohol testing, and AIDS education.

Defendant claims the trial court erred in denying his motion to suppress because the police did not have reasonable suspicion to detain him, and even if they did, the pat search that ensued exceeded constitutional bounds.  He also asserts the court erred in imposing the specified fees because it delegated the determination of his ability to pay to the probation department.  He further asserts he does not have the ability to pay and therefore the fees should be stricken.

---

[1]  All further statutory references are to the Health and Safety Code unless otherwise indicated.

1

We affirm. The trial court did not err in denying defendant's motion to suppress, and because he failed to object when the fees were imposed, he forfeited any complaint about referring his ability to pay to the probation department.

BACKGROUND

We recite only the facts relevant to the issues on appeal. The information charged defendant with transportation of methamphetamine for sale (§ 11379, subd. (a)) and possession for purposes of sale (§ 11378). About three months after the information was filed, defendant moved to suppress "[a]ny and all physical evidence," as well as any and all statements, obtained by the police, claiming the evidence was the fruit of an unlawful detention and pat search.

At the hearing on the motion, Officer Dustin Willis, a narcotics detective with the City of Vacaville Police Department, testified that on April 26, 2013, he and other police officers executed a search warrant at a residence occupied by David DeLuna. The residence was located on a large lot, over five acres in size. Besides DeLuna's residence, there were a number of farm and livestock structures on the property.

Officer Willis testified DeLuna told him "he had methamphetamine at the residence including a firearm and marijuana . . . [a]nd that his property was specifically used by his friends to purchase and/or s[ell] methamphetamine on a regular basis . . . [a]nd then he told me that he was expecting several of his associates to show up on his property that day for that purpose." Officer Willis relayed this information to Officer Stuart Tan, also a Vacaville narcotics detective and who also was on the property, and the detectives "wait[ed] for potential customers."

Defendant subsequently approached the DeLuna property in an older Jeep. Officer Tan recognized him as he drove up because Tan "had done surveillance of [defendant] . . . that led up to the search warrant" and was "actually in the process of authorizing a search warrant for [defendant] and that vehicle and resident [*sic*] regarding the trafficking of methamphetamine." Tan also testified he had "received information that [defendant] was in possession of several firearms at his residents [*sic*] . . . [and] was

2

possibly in possession of handguns also," but conceded it was "unclear as far as handguns."

As defendant pulled to a stop near the officers, Officer Tan called out, " '[H]ey, what's going on.' " Although initially nonresponsive, defendant eventually engaged in conversation with the officers. Based on the information he had gathered in support of the search warrant and the statement from DeLuna, Tan believed defendant "was there, specifically, to purchase and/or sale methamphetamine." So, he asked defendant to get out of the jeep.

Noticing "several bulges" in the pockets of defendant's Cargo shorts, Officer Tan asked if he could perform a search. Tan could not recall whether defendant consented and, in any case, proceeded with a pat search. Tan felt what he "believed to be a bag of methamphetamine and a pack of cigarettes" in defendant's front left shorts pocket. Specifically, Tan felt what he thought was "plastic sliding across the front of the cigarette box and then crunchy stuff in plastic." He believed the crunchy stuff was methamphetamine based on his "training and experience" and being "involved in numerous prior narcotics investigations and pat search[e]s of substance and methamphetamine in their pockets." Tan asked defendant if it was methamphetamine. Initially defendant did not respond. When Tan asked him if he "would be honest" with him and if it was methamphetamine, defendant eventually said it was. Tan then removed the methamphetamine from defendant's pocket and subsequently found another bindle of the drug in the jeep.

On cross-examination, Officer Tan testified the reason for the pat search was his "concern . . . that [defendant] could have weapons" and his primary intent while pat searching was "looking for weapons on his person." As he felt defendant's front left pocket, he felt what he "believed to be a bag of methamphetamine" as he was "grasping it from the outside." He explained he "felt the bag and the crunchiness together" and "recognized that it was a bag of crystal methamphetamine from prior searches."

The court denied defendant's motion to suppress, finding "[t]he officers have knowledge of the fact that this place has been used for buying and selling drugs. And the

3

defendant arrives. . . . Officer Tan has knowledge that maybe he has possessed weapons in the past. Thereon, he asked to pat search the individual. During the course of the pat search for weapons, he decides and discovers something more. [¶] I think that is reasonable to change his direction. And I think his actions up to that point were—there [was] probable cause for them at that point and this led on to the drugs."

When the case went to trial, a jury found defendant guilty of simple possession of methamphetamine (§ 11377), a lesser included offense of count one, the transportation for sale charge. After the jury failed to reach a verdict on the second count and on the prosecution's request, the court dismissed the possession for sale charge.

The trial court suspended imposition of sentence and placed defendant on three years' formal probation, conditioned on serving 90 days in the county jail term, with five days credit for time served. The court additionally imposed numerous fines and fees, including a "150-dollar fee pursuant to . . . Section 11372.7" and "any fees for drug and alcohol testing." Regarding the AIDS education fee, the court directed defendant to "pay a fine, pursuant to 1463.23" but did not set the amount, instead directing "Probation to assess the typical fee under that code section." The court also ordered defendant to "provide any financial information to the Probation Department as they request" and "to report to the Probation Department for a financial evaluation." The presentencing probation report indicated defendant had been employed for three weeks on a parttime/on call basis, but did not include an evaluation of defendant's ability to pay fines and fees. At the conclusion of the hearing, the court asked defendant if he understood and accepted the terms and conditions of probation, to which defendant responded "Yes, sir."

## DISCUSSION

### Motion to Suppress and Standard of Review

Defendant asserts the evidence obtained by the officers, including the methamphetamine found in his pocket, was the fruit of an unlawful detention and pat search, and therefore should have been suppressed.

" 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied,

4

where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.  [Citations.]' " (*People v. Weaver* (2001) 26 Cal.4th 876, 924, quoting *People v. Glaser* (1995) 11 Cal.4th 354, 362.)  Insofar as the facts are undisputed, we independently determine the constitutionality of the challenged search or seizure.  (*People v. Balint* (2006) 138 Cal.App.4th 200, 205.)

Defendant claims Officer Tan lacked reasonable suspicion to detain him at DeLuna's residence.  He further claims that even if Tan had reasonable suspicion, the pat search exceeded the bounds of what is constitutionally permitted.

" 'A police officer may temporarily detain and pat search an individual if he believes that criminal activity is afoot, that the individual is connected with it, and that the person is presently armed.  (*Terry v. Ohio* (1968) 392 U.S. 1, 30 . . . .)  The issue is whether the officers can point to specific and articulable facts that give rise to a reasonable suspicion of criminal activity.  Reasonable suspicion is a less demanding standard than probable cause and is determined in light of the totality of the circumstances.  [Citation.]'  [Citation.]  ' "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." ' [Citation.]" (*People v. Lindsey* (2007) 148 Cal.App.4th 1390, 1395–1396.)

Defendant maintains the officers had no reasonable suspicion of criminal activity because "it was unclear at the time the police detained [him] whether he was traveling to Mr. DeLuna's residence," as opposed to another building on the property, and Officer Tan only had a "hunch that [he] was visiting the property to engage in drug transactions."

Officer Tan was acting on more than a "hunch."  He knew DeLuna was expecting methamphetamine customers to arrive that day, and recognized defendant and his vehicle from his own investigation of defendant regarding methamphetamine trafficking. Officer Tan was in the process of obtaining a search warrant for defendant and the Jeep, and had also received information defendant possessed weapons.  Thus, he possessed

5

sufficient information to form a reasonable suspicion defendant might be involved in criminal activity, allowing a brief detention to inquire further.

Although defendant claims reasonable suspicion was lacking because he may have been heading to another residence on the property, "[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal— to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' " (*In re Tony C.* (1978) 21 Cal.3d 888, 894.)

Defendant next claims the pat search exceeded the constitutional bounds permitted by the Fourth Amendment. "A *Terry* search is limited to 'an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' (*Terry v. Ohio, supra*, 392 U.S. at p. 29.) As a general rule, an officer may not search a suspect's pockets during a patdown unless he or she encounters an object there that feels like a weapon. (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957.)" (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1237.)

However, under what has been termed the "plain-touch" exception to the warrant requirement, an officer may seize an object that is not a weapon if, during the pat search, its incriminating character is readily apparent. (*People v. Dibb* (1995) 37 Cal.App.4th 832, 836 (*Dibb*.) "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 375–376 (*Dickerson*).)

In determining on which side of the *Dickerson* line a particular search falls, the full factual context is of importance. "The critical question is not whether [the officer] could identify the object as contraband based on only the 'plain feel' of the object, but

whether the totality of the circumstances made it immediately apparent to [him] when he first felt the lump that the object was contraband." (*Dibb, supra,* 37 Cal.App.4th at pp. 836–837.)

Defendant contends Officer Tan manipulated the bag in defendant's pants pocket to ascertain it contained methamphetamine, rendering the search impermissible under *Dickerson*. The Attorney General maintains Tan did not testify that he manipulated the bag, but rather immediately suspected it contained methamphetamine, thus rendering the search lawful under *Dickerson.* While both parties focus on the character of Tan's initial touch of what turned out to be a baggie of methamphetamine, there is more to the factual context, rendering the search and eventual seizure of the contraband permissible. (See *Dibb, supra,* 37 Cal.App.4th at pp. 834–837.)

In *Dickerson*, the police stopped the defendant when he attempted to evade the officers as he was leaving a building known for cocaine traffic. (*Dickerson, supra*, 508 U.S. at pp. 368–369.) A patdown search revealed no weapons, but the officer felt a "small lump" in the defendant's pocket. (*Id*. at p. 369.) The officer did not immediately suspect the lump was contraband but examined it further and, according to the state court's findings, "determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." (*Id*. at p. 378.)

The *Dickerson* court began its analysis by acknowledging the plain-feel doctrine as a permissible corollary to the plain view doctrine. "The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment-or at least no search independent of the initial intrusion that gave the officers their vantage point. [Citations.] The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. [Citations.] The same can be said of tactile discoveries of contraband. If a

police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Id.* at pp. 375–376, fn. omitted.) The court concluded, however, that the facts of the case precluded reliance on the doctrine.

In *People v. Dickey*, on which defendant also relies, a police officer approached the defendant, who was sitting in the driver's seat of a car stopped in the roadway with its engine running. The defendant truthfully identified himself, but neither he nor the passenger had identification. He also could not produce a vehicle registration, but the officer ascertained by radio that the car was registered to him. (*People v. Dickey, supra,* 21 Cal.App.4th at p. 954 (*Dickey*).) The defendant refused the officer's request to search the car but consented to a search of a backpack, which he denied was his. Therein, the officer found a film canister containing baking soda and a toothbrush. (*Id.* at pp. 954–955.) The defendant claimed he used the baking soda for brushing his teeth. The officer then conducted a patdown search of the defendant, whom he said was nervous and sweating, and felt no hard objects. But he did feel a bulge. The officer's description was as follows: " 'I felt the bulge, and it felt not round, but elongated and it had a texture or just a good feeling to it, and I just squeezed from the outside of it and felt it was a plastic-felt like plastic or felt like a plastic baggie with something in it.' " (*Id.* at p. 955.) The deputy then reached into the defendant's pocket and retrieved a baggie containing less than one-half ounce of marijuana and a baggie containing 3.19 grams of cocaine, the latter being the basis of the charge at issue. (*Ibid.*) The appellate court concluded there was no justification even for the patdown search because there were no facts that "would lead an officer to ' ". . . reasonably believe in the possibility that a weapon may be used against him. . . ." ' [Citations.]" (*Id.* at p. 956.) The court further concluded that even if the search were permissible, its scope was exceeded when the officer reached into the

8

defendant's pocket because the incriminating character of the object was not immediately apparent. (*Id*. at p. 957.)

*Dibb* presents a contrasting situation. There, the defendant was a passenger in a car stopped for Vehicle Code violations. He consented to a search of his fanny pack, which contained ammunition, a scale with an odor of methamphetamine, a plastic bag, and a beeper. He was also wearing a beeper. The officer conducted a pat search that revealed no weapons, but under the leg of the defendant's pants, he felt an "unusual" object which was "lumpy," with "volume and mass." (*Dibb, supra*, 37 Cal.App.4th at pp. 834–835.) The *Dibb* court was of the view that "[w]hether an officer's suspicion that an object contained within a person's clothing consists of narcotics, derived at least in part from a patdown of a person's outer clothing, permits the officer to conduct a full-blown search of the individual or to seize the object felt depends on whether the officer had probable cause to arrest the person for narcotics possession; the warrantless search then becomes justified as a search incident to arrest. [Citation.]" (*Id*. at pp. 835–836, italics omitted.) This principle, *Dibb* explained, was in accord with the plain feel justification for seizure described in *Dickerson*. (*Dibb, supra*, at p. 836.) "The critical question," according to the *Dibb* court, "[was] not whether [the officer] could identify the object as contraband based on only the 'plain feel' of the object, but whether the totality of the circumstances made it immediately apparent to [him] when he first felt the lump that the object was contraband." (*Id*. at pp. 836–837.) The court concluded the seizure was justified because the officer's "tactile perception of the lump, combined with the other circumstances, created a reasonable inference that the lump was contraband. [Citation.]" (*Id*. at p. 837.) The "totality of the circumstances" included the beepers, the scale smelling of methamphetamine, and the plastic bag in the defendant's possession, and the "unusual lump . . . located in an unusual location not commonly utilized to carry everyday items." (*Id*. at pp. 836–837.)

We conclude the instant case is more similar to *Dibb* than it is to *Dickey*.

First, we agree with the Attorney General that Officer Tan did *not* testify that he manipulated the baggie in order to discern more about its contents. On the contrary,

during cross-examination designed to elicit testimony that Tan was unsure of what was in the baggie and thus manipulated it in order to deduce suspected methamphetamine, he testified as follows:

"Q. And then in his front left pocket of his shorts, you felt something that you believed to be another packet of cigarettes, correct?

"A. Yes.

"Q. Based on your training and experience and your observation from your touching of the pockets, the left-hand side of the pocket, how big of a packet of cigarettes would you say you felt?

"A. A packet of cigarettes—a normal pack.

"Q. Was there anything that you felt other than the packet of cigarettes in the left-hand pocket of the shorts?

"A. I felt what I believed to be a bag of methamphetamine sliding across that Marlboro box of the cigarette box when I was grasping it from the outside.

"[¶] . . .[¶]

"Q. . . . As it relates to the plastic bag that you felt in the left pocket, did you feel the plastic bag before or after feeling the cigarette pack?

"A. Simultaneously.

"Q. You said that based on your training and your experience, you recognized that this plastic bag was something that could contain methamphetamine, would that be a correct characterization of your testimony?

"A. Sort of but not quite.

"Q. Could you explain it further or correct anything I misstated?

"A. I, basically, said that when I felt the bag and the crunchy substance in it—when I grabbed the outside of the cigarette pack, I felt the bag and the crunchiness together. I recognized that it was a bag of crystal methamphetamine from prior searches.

"Q. And to your understanding this grasping of the bag and the crunchy substance that was in it, was this something that occurred simultaneously as you were holding the cigarette pack?

"A. It happened simultaneously to me grasping and having the exterior pocket."

This testimony stands in contrast to the officer's testimony in *Dickerson* which precluded application of the plain feel exception in that case. In *Dickerson,* the officer's testimony " 'belie[d] any notion that he "immediately" recognized the lump as rock cocaine' "; rather "the officer determined that the lump was contraband only after 'squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket'— a pocket which the officer already knew contained no weapon." (*Dickerson, supra,* 508 U.S. at p. 378.) Here, Officer Tan did not "already" know defendant's left front

10

pocket contained no weapon. Tan felt the sliding, crunching baggie simultaneously with feeling the cigarette box (i.e., simultaneously with feeling the "bulge"). And, based on his training and experience, Tan "recognized" he was feeling a baggie of methamphetamine. These circumstances bring this case within the plain feel exception.

Furthermore, this case involves more than an officer simply making a pat search and feeling a drug baggie. Officer Tan was on the property pursuant to a search warrant, and methamphetamine sales were expected to take place at DeLuna's residence. Tan knew defendant, had done surveillance on him in connection with a drug investigation, and was in the process of obtaining a warrant for him and to search his residence and car. And, significantly, before Tan removed the baggie from defendant's pocket, defendant voluntarily confirmed the baggie contained methamphetamine.[2] As in *Dibb*, the officer's "tactile perception of the lump, combined with the other circumstances, created a reasonable inference that the lump was contraband." (*Dibb, supra*, 37 Cal.App.4th at p. 837.)

Accordingly, the trial court did not err in denying defendant's motion to suppress.

### Drug Program, Drug and Alcohol Testing, and AIDS Education Fees

Defendant next claims the trial court erred because it delegated the determination of his ability to pay fees to the probation department. He further asserts he cannot pay the fees and they should be stricken. The Attorney General maintains defendant forfeited his challenge to the fees because he failed to make any objection when they were imposed. We agree with the Attorney General, given the Supreme Court's recent trilogy of decisions on fees and forfeiture—*People v. Aguilar* (2015) 60 Cal.4th 862 (*Aguilar*), *People v. Trujillo* (2015) 60 Cal.4th 850 (*Trujillo*), and *People v. McCullough* (2013) 56 Cal.4th 589 (*McCullough*).

In *McCullough*, the Supreme Court considered "whether a defendant who failed to object that the evidence was insufficient to support a finding of his ability to pay a

---

[2] Although the trial court did not consider this fact relevant—saying it happened "after" the pertinent events—in fact, defendant's admission occurred *before* Tan actually reached into defendant's pocket and removed the baggie.

11

booking fee [under Government Code section 29550.2, subdivision (a)] forfeited his right to challenge the fee on appeal." (*McCullough, supra,* 56 Cal.4th at p. 591.) A booking fee must be imposed "[i]f the person has the ability to pay . . . ." (Gov. Code, § 29550.2, subd. (a).) In holding that an ability-to-pay objection is forfeited in the absence of an objection in the trial court, the high court distinguished sufficiency of the evidence challenges to a judgment because the defendant has necessarily objected to the sufficiency of the evidence by contesting it at trial. (*McCullough*, *supra*, 56 Cal.4th at pp. 596–597.) By contrast, when it comes to the defendant's ability to pay a fine or fee, the factual record remains undeveloped in the absence of an objection, thus precluding informed appellate review of what is essentially a factual determination. (*Id.* at p. 597.)

In *Trujillo,* the court held the forfeiture rule announced in *McCullough* also applies to probation supervision fees imposed under Penal Code section 1203.1b. (*Trujillo, supra,* 60 Cal.4th at pp. 853–854.) The defendant in *Trujillo* sought to distinguish probation supervision fees from the booking fees, arguing a probation supervision fee may only be imposed if certain procedures are followed. (*Id.* at pp. 857–858.) The Supreme Court rejected this argument, explaining the burden rests on the defendant to assert noncompliance with any of the procedures specified by statute. (*Id.* at p. 858.)

In *Aguilar,* the court applied the forfeiture rule to both the probation supervision fee as well as an order for reimbursement of fees paid to appointed trial counsel under Penal Code section 987.8. (*Aguilar, supra,* 60 Cal.4th at p. 864.) Just as in *Trujillo,* the court rejected the attempt to distinguish *McCullough* on the ground the booking fee statute, in contrast to the probation supervision fee statute, does not include certain procedural requirements. (*Aguilar, supra,* at p. 866.)

Although defendant, like the defendants in *McCullough, Trujillo,* and *Aguilar,* failed to make any objection in the trial court to the imposition of the fees, he nevertheless contends his challenge is a "purely legal question that requires no objection to preserve it on appeal." We disagree.

12

As the court stated in *McCullough,* defendant may not " 'transform . . . a factual claim into a legal one by asserting the record's deficiency as a legal error.' [Citation.] By 'failing to object on the basis of his [ability] to pay,' defendant forfeits both his claim of factual error and the dependent claim challenging 'the adequacy of the record on that point.' [Citations.]" (*McCullough, supra,* 56 Cal.4th at p. 597.) Moreover, defendant's attempt to distinguish *McCullough* is no different from the arguments the Supreme Court rejected in *Trujillo* and *Aguilar.* As the court explained in *Trujillo,* if the trial court fails to follow certain mandatory procedures or guidelines contained in a statute authorizing a fine or fee, it is the defendant's burden to assert noncompliance with the required procedures. (*Trujillo, supra,* 60 Cal.4th at p. 858.) Failure to object to the trial court's noncompliance waives the right on appeal to challenge the imposition of the fee or fine. (*Ibid.*)

We therefore conclude the forfeiture rule announced in *McCullough,* and reaffirmed and further explicated in *Trujillo* and *Aguilar,* applies to the Health and Safety Code section 11372.7 drug program fee, the Penal Code section 1203.1ab drug and alcohol testing fees, and the Penal Code section 1463.23 AIDS education fee. In sum, because defendant failed to voice any objection to the referral of his ability to pay to the probation department, we conclude he forfeited any complaint about the referral on appeal.

Defendant alternatively claims that if he did forfeit his challenge to the fees by failure to object, his trial counsel provided ineffective assistance of counsel.

In order to establish a claim of ineffective assistance of counsel on appeal, a defendant bears the burden of demonstrating both that counsel's performance fell below an objective standard of reasonableness (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688) and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694; *People v. Ledesma* (2006) 39 Cal.4th 641, 746.) " ' "[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged [,] . . . unless counsel was

13

asked for an explanation and failed to provide one, or unless there could simply be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

Defendant maintains there could have been no tactical reason for his counsel not to object to the imposition of the fees. However, the probation report indicates defendant had been employed in the past and in his "current" employment was making $22.00 an hour. Thus, defense counsel could have reasonably concluded defendant had the ability to pay the drug program, drug and alcohol testing, and AIDS education fees and therefore deemed no objection was warranted. An attorney does not provide deficient performance by failing to make an objection that counsel determines would be futile or unmeritorious. (See *People v. Price* (1991) 1 Cal.4th 324, 387.) We therefore reject defendant's ineffective assistance of counsel claim.

**DISPOSITION**

The judgment is affirmed.

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Dondero, J.

A142237, *People v. Crowley*

15