Filed 3/8/22  P. v. Houser CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASON PATRICK HOUSER,<br><br>    Defendant and Appellant. | C093735<br><br>(Super. Ct. No. STK-CR-FER-2020-0000857) |

After the trial court denied his motion to suppress evidence seized as a result of a patdown search, defendant Jason Patrick Houser pled no contest to possession for sale of a controlled substance. Defendant contends the trial court erred in denying the motion because the search was neither supported by reasonable suspicion nor lawful in its scope.

Although we acknowledge that under a slightly different factual scenario our decision could well be different, on these specific facts we uphold the search and affirm the judgment.

1

**BACKGROUND**

Early one afternoon in January 2020, San Joaquin Sheriff's Deputies Kannalikham and McElwain searched defendant and found a baggy containing 17 grams of methamphetamine, $46, two empty plastic bags, and an unused syringe. A search of defendant's vehicle yielded a functioning digital scale, 36 resealable plastic bags, and two plastic bags with methamphetamine residue. Based on this evidence, defendant was charged with possession for sale of methamphetamine (Health & Saf. Code, § 11378). The information also alleged that defendant had suffered a prior serious felony conviction for robbery in 1997. (Pen. Code, §§ 667, subd. (d), 1170.12, subd. (b).)

Defendant filed a motion to suppress under Penal Code section 1538.5.

*Hearing on the Motion to Suppress*

At the hearing, Deputy Kannalikham testified he and Deputy McElwain were on duty in an unmarked vehicle when they saw defendant get out of a parked car. The deputies pulled up behind the car and saw it had no registration tags. Kannalikham checked DMV records and found the registration had been suspended since 2014. The deputies were still in their car as defendant walked toward them.

From inside the car, Kannalikham told defendant about the registration problems; defendant walked toward the passenger side of the deputies' car and responded he had just bought the car. Kannalikham asked defendant whether he was on parole or probation, and he responded he was on probation for a firearm. "Due to that . . ., for the safety of the deputies," Kannalikham immediately got out of the deputies' car and detained defendant, handcuffing him and patting him down. Kannalikham testified that defendant's disclosure regarding the firearm "alert[ed] me for officer safety." He noted defendant was wearing a hoody sweatshirt that extended past his beltline, where a firearm might be hidden. Based on 12 years of patrolling the area, Kannalikham knew there was a nearby diverting canal with "a lot of homeless encampment[s] where there's a lot of

2

individuals there that use[] illicit drugs" and "a lot of violent crimes that go through there."

Although defendant's probation included a search condition, Kannalikham did not know this at the time he searched defendant. Kannalikham testified regarding the patdown search that: "I started on the left side of [defendant's] lower half . . . where I felt a bulge in his left front pants pocket," and "when I pushed on it, it was crunchy like a it was a bag of ice." On cross-examination, defense counsel asked: "So you grabbed [the bulge], squeezed it, it felt crunchy?" Kannalikham responded: "I just pressed on it, you could feel it was crunchy." On redirect, Kannalikham stated he patted defendant's pocket area three times, palm facing down with fingers extended. Based on his training and experience, Kannalikham believed the bag contained methamphetamine. Defendant told him the bulge was money; Kannalikham responded that it was not money, reached into defendant's pocket, and retrieved the baggy. He found the syringe in defendant's left pocket as well. He then searched defendant's other pockets and his car.

After hearing argument, the trial court denied the motion without explanation. Defendant subsequently pleaded no contest to possession of methamphetamine for sale and was sentenced to the upper term of three years in custody; his strike was dismissed. He timely appealed; after delay for augmentation of the record and multiple granted requests to continue the briefing schedule, the case was fully briefed on November 12, 2021, and assigned to this panel shortly thereafter.

## DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress because the search was neither justified nor lawfully executed. As we next explain, we disagree.

# I

## *Legality of the Search*

"In reviewing a suppression ruling, 'we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found.' " (*People v. Lomax* (2010) 49 Cal.4th 530, 563.) "[W]e examine 'the record in the light most favorable to the trial court's ruling.' " (*People v. Turner* (2013) 219 Cal.App.4th 151, 159.)

The prosecution bears the burden of proving a warrantless search or seizure falls into a recognized exception to the Fourth Amendment's warrant requirement. (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1213.) One such exception is a "carefully limited search of the outer clothing" of a person suspected of criminal activity who "may be armed and presently dangerous." (*Terry v. Ohio* (1968) 392 U.S. 1, 30.)[1] A *Terry* search is justified if, under the totality of the circumstances, "a reasonably prudent [person] . . . would be warranted in the belief that his [or her] safety or that of others was in danger." (*Id.* at p. 27.) "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Id.* at p. 21.) An "inchoate and unparticularized suspicion or 'hunch,' " is insufficient, regardless of the officer's good faith. (*Id.* at p. 27; *People v. Roth* (1990) 219 Cal.App.3d 211, 214.)

Considerations relevant to this inquiry include general factors such as the crime at issue, the officer's knowledge and experience, the characteristics of the area, and the time of day. (See *United States v. Mendenhall* (1980) 446 U.S. 544, 563-564 [Powell, J.,

---

[1] Another exception, a probation search, is inapplicable here "[b]ecause the officers were unaware of the probation search condition at the time they detained and searched defendant . . . ." (*People v. Thomas* (2018) 29 Cal.App.5th 1107, 1115.)

4

concurring]; *People v. Medina* (2003) 110 Cal.App.4th 171, 177; *In re Jeremiah S.* (2019) 41 Cal.App.5th 299, 305.) Other relevant factors specific to a suspect are "visible bulges or baggy clothing that suggest a hidden weapon" and "evasive and deceptive responses to an officer's questions about what the individual was doing." (*In re Jeremiah S.,* at p. 305.)

Here, as we have described, the uncontradicted evidence presented at the hearing on the motion described an encounter in a high crime area with a probationer who approached the deputies while they were seated within an unmarked car, and volunteered that he had a criminal history related to firearms while wearing clothing that concealed his waistband. The testimony established that it was the combination of these circumstances, culminating in defendant's unsolicited approach and volunteering of gun-related information, that caused the searching deputy concern for both deputies' safety. We do not dispute that each of these factors taken on their own or even in certain more limited combinations could be deemed inadequate to justify a limited detention and patdown search; however, considered in their totality they were sufficient here.

Defendant urges the search occurred in broad daylight, he was not suspected of a particular crime, and he did not behave threateningly, evasively, or deceptively. And he argues, correctly, the factors we have discussed offer limited predictive insight into whether he was, at the time of the search, armed and dangerous. (See *People v. Thomas, supra*, 29 Cal.App.5th at p. 1116 ["Mere presence in a high-crime area cannot supply the necessary reasonable suspicion"]; *People v. Medina, supra*, 110 Cal.App.4th at p. 177 [" 'minor traffic offenses do not reasonably suggest the presence of weapons' "]; *Thomas v. Dillard* (9th Cir. 2016) 818 F.3d 864, 884 ["That a person is normally dressed does not give rise to reasonable suspicion . . . . Otherwise, innumerable college students everywhere could be frisked for weapons on appearance alone"]; *Burrell v. McIlroy* (9th Cir. 2006) 464 F.3d 853, 858, fn. 3 ["prior criminal history cannot alone establish reasonable suspicion"].)

However, where, as here, a probationer who *could* (per their clothing style) be concealing a gun, while in a crime-ridden area, having just emerged from a vehicle that has not been registered for more than half a decade, walks up to an unmarked police car and broaches a history of illegal firearms activity to police while they are still seated in their car--even if in the spirit of forthright compliance--we cannot say a reasonably prudent officer would remain unconcerned about officer safety. "The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957.) Under the totality of the circumstances, a limited patdown search was justified under *Terry*.

II

*The Scope of the Search*

"If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373.) However, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (*Id.* at pp. 375-376.) Under this "plain feel" doctrine, "the dispositive question . . . is whether the officer who conducted the search was acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe that the lump in respondent's jacket was contraband." (*Id.* at p. 377.)

*Dickerson* held this doctrine inapplicable where the officer determined a small, hard lump "was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket' -- a pocket *which the officer already knew contained*

6

*no weapon*." (*Minnesota v. Dickerson, supra,* 508 U.S. at p. 378, italics added; see *People v. Dickey, supra*, 21 Cal.App.4th at pp. 955, 957 [officer, having found no weapons, impermissibly squeezed lump suspected to be contraband].) "[T]he officer's continued exploration of respondent's pocket *after having concluded that it contained no weapon* was unrelated to 'the sole justification of the search [under *Terry:*] . . . the protection of the officer and others nearby.' " (*Dickerson,* at p. 378, italics added.) Thus, once the officer determines a suspect's pocket does not contain a weapon, the patdown is no longer justified under *Terry* and the officer cannot continue to squeeze, manipulate, or palpate an object in the pocket without probable cause for a further search. (See *People v. Limon* (1993) 17 Cal.App.4th 524, 536 [once officer believes a concealed object is not a weapon, "the officer cannot continue to palpate the object without probable cause to search the suspect"].)

Importantly, this does not preclude probing an object to dispel the suspicion it is a weapon. In *United States v. Mattarolo* (9th Cir.2000) 209 F.3d 1153, for example, the officer "felt, with the flat of his hand" an object that "could have been a pocket knife" and then "pressed it between his thumb and forefinger in order to make sure this was not the case," at which point he was "alerted immediately to the presence of drugs by the familiar sensation of . . . a granular substance." (*Id.* at p. 1158.) The Ninth Circuit held "such a precautionary squeeze is well within the scope of *Terry*." (*Ibid.*; see *United States v. Yamba* (3d Cir.2007) 506 F.3d 251, 259 [the proper question "is not the immediacy and certainty with which an officer knows an object to be contraband or the amount of manipulation required to acquire that knowledge but rather what the officer believes the object is by the time he concludes that it is not a weapon"]; see also *People v. Lee* (1987) 194 Cal.App.3d 975, 985 [upholding officer's patdown using a "gripping motion"; stating "something more is contemplated than a gingerly patting of

7

the clothing" and that "in order to rule out the presence of a weapon, the officer may have to determine an object's 'weight and consistency' "] (*Lee*).)[2]

Applying these holdings to the facts before us, the fact that Kannalikham pressed down on the bulge in defendant's pocket after initially feeling it is therefore significant only if he had already determined defendant's pocket contained no weapon. Although defendant argues that this must have been the case, the record does not so demonstrate. Defendant asserts: "Deputy Kannalikham never claimed that the lump felt like a weapon or that he could not tell if it was a weapon when he pat-down [*sic*] [defendant]. It follows that Deputy Kannalikham did not believe the lump was a weapon." (Footnote omitted.)

But the trial court's denial of the motion evinced its acceptance of the evidence presented; this evidence is more than sufficient to support a constitutionally benign interpretation of the events. Kannalikham testified that, having been alerted to the possibility defendant was armed, he commenced the search by patting defendant's front left pocket area three times, pressing down upon sensing the bulge and concluding, based on his training and experience, it was methamphetamine. The trial court could have reasonably concluded from this testimony "the entire search . . . was necessary to rule out the presence of a weapon, and that there was no appreciable lapse of time between [Kannalikham's] realization that the object was not a weapon, and his realization it was [methamphetamine]." (*Lee, supra*, 194 Cal.App.3d at p. 985.) Indeed, there was no testimony suggesting a contrary conclusion. Kannalikham's suspicion was supported not only by the telltale crunchiness of the bulge but also by his expertise, defendant's clearly false assertion that the bulge was money, and the location where the encounter took

---

[2] Although it preceded *Dickerson*, *Lee* similarly held "[t]he present situation presents the tactile equivalent of cases where an officer permissibly and reliably detects contraband through sight or smell and thereupon arrests the defendant." (*Lee*, *supra*, 194 Cal.App.3d at p. 984; *People v. Dibb* (1995) 37 Cal.App.4th 832, 836 [harmonizing *Lee* and *Dickerson*].)

8

place, which was known for frequent drug transactions. Therefore, examining the record in the light most favorable to the trial court's ruling, as we must, we conclude Kannalikham was acting within the lawful bounds of *Terry* when he gained probable cause to believe the bulge was methamphetamine.

Accordingly, because the search and seizure did not exceed constitutional bounds, the trial court did not err in denying the motion to suppress.

## DISPOSITION

The judgment is affirmed.

_____/s/_____
Duarte, J.

We concur:

_____/s/_____
Mauro, Acting P. J.

_____/s/_____
Renner, J.

9